THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GROVER TATE, Petitioner-Appellant.

First District (5th Division)   No. 1—97—1067

Opinion filed March 31, 1999.

Michael J. Pelletier and Judi Rogers, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Judy DeAngelis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Following a jury trial, defendant Grover Tate was convicted of first-degree murder and attempted first-degree murder and sentenced to concurrent 40- and 30-year prison terms, respectively. His convictions and sentences were affirmed on direct appeal. *People v. Tate*, 253 Ill. App. 3d 1107 (1993) (unpublished order under Supreme Court Rule 23). Defendant subsequently filed a *pro se* postconviction petition, and counsel was appointed to assist him. On the State's motion, defendant's petition was dismissed without an evidentiary hearing. Defendant appeals from that dismissal, contending that trial counsel's failure to call three alibi witnesses to testify at trial constituted ineffective assistance.

The evidence adduced at trial established that on August 30, 1989, Keith Johnson and his cousin, Neil Hudson, were walking to a store in the area of 50th Place and St. Lawrence Avenue in Chicago when they encountered three women they knew as Toya, Tanya, and Pamela. As Toya and Johnson exchanged insults, defendant and another man came around the corner and Tanya started yelling, "Here come my Folks. Here come my Folks." Defendant hugged Tanya, and Johnson and Hudson continued toward the store.

Returning from the store, Johnson and Hudson walked by defendant, who was wearing a hat that had the word "June" and a six-point star on it; defendant continued yelling, "What did you all say to me? What you say? What you say?" Neither Johnson nor Hudson responded to defendant, who then began following the two men. Johnson and defendant started to argue; defendant then picked up a baseball bat and Johnson picked up a golf club. Johnson swung the club and defendant swung the bat, but they did not hit each other. After the verbal altercation ended, defendant stated, "I knew I should have brought my pistol out with me."

Johnson and Hudson then continued to walk to 724 East 50th Place, where they sat on the porch with Tara Louis and Nikita Wilson. On two occasions, they saw a maroon Thunderbird slowly drive by the house. At about 8:30 p.m., Johnson saw defendant, who was not wearing a hat at this time, and his friend standing on the corner underneath a streetlight. Defendant reached into his jacket, drew a pistol and fired it toward the porch. As he was running away, Johnson heard defendant say, "I am going to kill you, mother fucker," and then he heard four more shots fired. Johnson sustained two gunshot wounds.

At about 8 p.m., Ernest Crossley, a friend of both Johnson and Hudson, was sitting on his porch when he saw a red Thunderbird stop in the middle of the street. Defendant and another man got out of the car. Defendant was wearing a hat that had the word "June" and a six-point star on it. Approximately 30 minutes later, Crossley went to 718 East 50th Place, where he was sitting on the porch visiting with friends when he saw defendant and the other man running. Defendant stopped next to a streetlight and shot toward the porch at 724 East 50th Place. Defendant then walked toward that address and continued shooting. At this time, defendant was no longer wearing his hat.

Tara Louis, Nikita Wilson, Johnson and Hudson were sitting on the porch when Louis noticed, on two occasions, a maroon Thunderbird slowly drive by the house. About 15 minutes later, she saw defendant, who was standing under a streetlight, pull a gun from under his jacket and fire it at them.

Odessa Nunn was in her apartment at 718 East 50th Place at 8:35 p.m. when she heard six or seven gunshots. Shortly thereafter, she heard glass breaking. Outside the kitchen, she found Hudson and brought him inside, where he died.

On August 30, 1989, at about 7:30 p.m., Gregory Jackson was preparing to use the telephone located at 50th Place and Champlain Avenue in Chicago when he saw Johnson swinging a golf club and defendant swinging a bat. Hudson was also present, but he was not involved in the dispute. Another man was there with defendant. The altercation lasted about 10 seconds, and defendant then ran away. Jackson testified that defendant was wearing a hat that had "June" and a six-point star on it. Jackson admitted that he had known Johnson, who was a friend of his nephew's, for about 12 years, and that he had known Hudson for about 15 years.

Approximately 35 minutes later, Jackson was driving his car in the vicinity of 50th Place and Champlain when he saw defendant. Jackson told defendant to go back where he came from and to stay out of

trouble. According to Jackson, defendant replied, "These mother fuckers started this shit and I am going to finish it. I am a real gangster." Jackson then drove away.

Dr. Tae An testified that he examined Hudson's body and relied upon a case report that had been prepared by an employee of the medical examiner's office who learned the circumstances of the shooting from the police. According to Dr. An, the report stated that three unknown men and an unknown woman, one or more of whom had a gun, approached the porch and began firing at the people who were on it.

Although defendant did not testify, during the State's case in chief he was required to display a tattoo to the jury which included a six-point star. At the conclusion of the State's case in chief, defendant stated that his mother was present at trial and that he had conferred with her and his attorney in reaching his decision not to testify. Thereafter, defense counsel argued, in part, that the witnesses, all of whom knew the victims, identified defendant as the shooter because he had been involved in an earlier altercation with the victims.

Defendant filed a postconviction petition in which he raised several issues, including that trial counsel was ineffective for failing to call alibi witnesses Sherry Huntley, Geraldine Tate, and Tanya Hall. He attached a signed affidavit from each of them.

In her affidavit, Huntley stated that on August 30, 1989, she was at 4715 South Drexel in Chicago from 8 p.m. to 9:30 p.m. with defendant and his mother, Geraldine Tate, and that defendant did not leave the apartment until the police arrested him at 9:30 p.m.

Geraldine's affidavit was consistent with Huntley's. Additionally, Geraldine stated that at 8:35 p.m. defendant was talking on the telephone with Hall. Geraldine stated that she gave this information to defense counsel prior to trial and indicated her willingness to testify. Although she was present in court during defendant's trial, she was not "allowed" to testify. Geraldine also accompanied Hall when she was interviewed by defense counsel.

In her affidavit, Hall stated that she was talking with defendant on the telephone when she heard gunshots. According to Hall, she shared this information with defense counsel and offered to testify. However, defense counsel did not call her to testify. Hall also stated that she gave a statement to police officers and testified before the grand jury.

Following a nonevidentiary hearing, the circuit court granted the State's motion to dismiss defendant's postconviction petition. Defendant appeals the dismissal.

■ The Post-Conviction Hearing Act establishes a remedy for a

criminal defendant who claims that a substantial violation of his federal or state constitutional rights occurred in the proceedings that resulted in his conviction. 725 ILCS 5/122—1 *et seq.* (West 1992); *People v. Ramirez*, 162 Ill. 2d 235, 238-39 (1994). A postconviction proceeding is a collateral attack on a prior judgment, and, due to considerations of *res judicata* and waiver, the scope of postconviction review is limited " 'to constitutional matters which have not been, and could not have been, previously adjudicated.' " *People v. Thompkins*, 161 Ill. 2d 148, 157 (1994), quoting *People v. Winsett*, 153 Ill. 2d 335, 346 (1992).

■ At the dismissal stage of a postconviction proceeding, "the circuit court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity which would necessitate relief under the Act." *People v. Coleman*, 183 Ill. 2d 366, 380 (1998). At this point in the proceeding, all well-pleaded facts in defendant's petition and accompanying affidavits are to be taken as true, and the circuit court is therefore precluded from engaging in any fact finding. *Coleman*, 183 Ill. 2d at 380-81, citing *People v. Caballero*, 126 Ill. 2d 248, 259 (1989).

■ A postconviction defendant is not entitled to an evidentiary hearing as a matter of right, but a hearing is "required whenever the petitioner makes a substantial showing of a violation of constitutional rights." *Coleman*, 183 Ill. 2d at 381. The allegations in defendant's petition must be supported by the record or accompanying affidavits, and nonspecific and nonfactual assertions are insufficient to require an evidentiary hearing under the Act. *Coleman*, 183 Ill. 2d at 381. The circuit court may properly dismiss a postconviction petition where the allegations contained therein are contradicted by the record from the original trial proceedings. *Coleman*, 183 Ill. 2d at 381-82. However, when a petitioner's claims are based upon matters outside the record, " 'it is not the intent of the [A]ct that [such] claims be adjudicated on the pleadings.' " *Coleman*, 183 Ill. 2d at 382, quoting *People v. Airmers*, 34 Ill. 2d 222, 226 (1966). Rather, the function of the pleadings is to determine whether the petitioner is entitled to an evidentiary hearing. *Coleman*, 183 Ill. 2d at 382.

■ Accordingly, the dismissal of a postconviction petition is appropriate "only when the petition's allegations of fact—liberally construed in favor of the petitioner and in light of the original trial record—fail to make a substantial showing of imprisonment in violation of the state or federal constitution." *Coleman*, 183 Ill. 2d at 382. Fact-finding and credibility determinations are to be made at the evidentiary hearing and not at the dismissal stage of the proceedings. *Coleman*, 183 Ill. 2d at 385. Therefore, the dismissal of a postconvic-

tion petition for failure to allege a substantial deprivation of constitutional rights is a legal determination which this court reviews *de novo. Coleman*, 183 Ill. 2d at 387-88.

■ To establish a claim for ineffective assistance of counsel, defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to the defendant. *People v. Moore*, 177 Ill. 2d 421, 428 (1997). Although counsel's decision regarding whether or not to present a particular witness is generally a matter of trial strategy (*People v. Flores*, 128 Ill. 2d 66, 85-86 (1989)), counsel may be deemed ineffective for failure to present exculpatory evidence of which he is aware, including the failure to call witnesses whose testimony would support an otherwise uncorroborated defense. *People v. Gibson*, 244 Ill. App. 3d 700, 703-04 (1993); *People v. Truly*, 230 Ill. App. 3d 948, 953 (1992); *People v. Skinner*, 220 Ill. App. 3d 479, 485 (1991); *People v. O'Banner*, 215 Ill. App. 3d 778, 790 (1991)).

■ We conclude that defendant met his burden and should have been afforded an evidentiary hearing. Defense counsel's strategy was to draw the jury's attention to various weaknesses in the State's case which involved the identification of defendant as the shooter. For example, each of the witnesses to the incident was well acquainted with both victims, and they described defendant's hat to the police but did not otherwise describe defendant. Counsel further noted that very little information was available regarding an individual who provided the police with information that eventually led to defendant's arrest, and that a police officer informed the medical examiner's office that four offenders, as opposed to two, were involved in the shooting. Considering the evidence in the affidavits as true, as we must at this point in the proceedings, it supports defendant's theory that he was misidentified, and there is no apparent strategic reason for not calling them to testify.

The State contends that counsel's decision not to call defendant's alibi witnesses was strategic because counsel interviewed defendant's mother and Hall. Although counsel may have determined that the witnesses would not testify truthfully or would not be persuasive due to their close relationship with defendant, we cannot say as a matter of law that was counsel's reasoning. See *Gibson*, 244 Ill. App. 3d at 704. The record does not reflect whether counsel made a professionally reasonable tactical decision not to call the witnesses or whether, as defendant maintains, counsel failed to call them as the result of incompetence. Once evidence is heard on the issue, the circuit court will be in a better position to determine whether defendant received ineffective assistance of counsel. See *Gibson*, 244 Ill. App. 3d at 704.

Accordingly, the judgment of the circuit court is reversed and this matter is remanded for an evidentiary hearing consistent with the Post-Conviction Hearing Act.

Reversed and remanded.

HOURIHANE, P.J., and GREIMAN, J., concur.