FIRST DIVISION
March 31, 2008

No. 1-06-0032

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 99 CR 22151 |
| | ) | |
| ERIC MARSHALL, | ) | The Honorable |
| | ) | Joseph G. Kazmierski, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Defendant Eric Marshall appeals the dismissal of his petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2002)). In 2000, defendant pled guilty to one count of armed violence in exchange for a seven-year prison sentence. His conviction and sentence were affirmed on direct appeal. People v. Marshall, No. 1-00-3698 (November 12, 2002) (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)).

In 2003, defendant filed a petition under the Act, claiming he did not receive the "benefit of his bargain" when a three-year term of mandatory supervised release was added to the seven-year prison term he had accepted in a plea agreement. See 730 ILCS 5/5-8-1(d)(1) (West 2000) (in general, every sentence for a Class X felony must include a sentence of three years' mandatory supervised release in addition to a prison term). Defendant's petition survived the first stage of

postconviction proceedings. 725 ILCS 5/122- 2.1(a)(2) (West 2002). It was dismissed at the second stage on the State's motion. 725 ILCS 5/122- 2.1(b) *et seq.* (West 2002). Defendant appeals. We affirm but vacate the $90 fee assessed to defendant under section 22-105 of the Code of Civil Procedure (Code) (735 ILCS 5/22-105 (West 2004)) (frivolous lawsuits filed by prisoners).

Defendant was arrested in 1999 after police found a loaded gun under the car he was driving and 15 packets of cocaine on his person. Marshall, slip op. at 2. In pretrial proceedings on March 8, 2000, Leonard Schultz, defendant's retained counsel, requested a plea conference under Supreme Court Rule 402 (177 Ill. 2d R. 402). The trial judge asked defendant: "[Do you] want me to have the [plea] conference with your attorney?" Defendant answered, "Yes." After the conference, Schultz said: "I have communicated the results of the conference. My client would like an opportunity to think about the offer made by the State." The matter was continued until April 19, 2000, when the following took place:

"MR. SCHULTZ: [The court] yesterday [on April 18, 2000] graciously offered seven years in return for a plea. I believe [defendant] is ready to do that at this time.

I am asking him now to execute the appropriate waivers in light of his decision.

Is that right?

[DEFENDANT]: I want a continuance.

MR. SCHULTZ: Judge, my client just said to me he wanted a

continuance.

For what reason, exactly?

[DEFENDANT]: To think.

MR. SCHULTZ: ***

Judge, my client is asking the Court to have a couple more days or a day *** to consider his decision.

THE COURT: I'm setting the matter for trial.

MR. SCHULTZ: Okay, Judge.

THE COURT: Nobody will force Mr. Marshall to do anything. But I've given him a lot of time to think of what he wants to do in this matter.

So, if you don't want to do it today we will set it down for trial. That's the way the matter will be disposed of.

Pick a date, Mr. Schultz.

[DEFENDANT]: All right. Go ahead.

MR. SCHULTZ: *** My client has just indicated that it's his desire and a very wise choice to take advantage of the offer that the Court has given him.

* * *

THE COURT: Mr. Marshall, there was a conference about your case the other day and we continued it.

Have you had a chance to talk to your attorney about that conference and what we talked about in the conference?

3

[DEFENDANT]: Yes.

THE COURT: ***

I have before me a charge of armed violence.

How do you plead–guilty or not guilty?

[DEFENDANT]: Guilty.

THE COURT: This is what is called a Class X felony. Now the sentence on this charge *** goes from a period in the penitentiary from 6 years up to 30 years.

You could be fined or you could get a penitentiary sentence and have to serve a period of three years['] mandatory supervised release, which is like parole, when you get out of the penitentiary.

Those are the different types of sentences and the range of sentences you can get for this charge.

***

Do you understand that?

[DEFENDANT]: Yes.

THE COURT: When you plead guilty you give up your right to any type of trial, either jury or bench.

* * *

THE COURT: By signing this piece of paper that means you don't want a jury trial in the matter; is that right?

4

[DEFENDANT]: Yes.

THE COURT: ***

[When you plead guilty you] also give up your right *** to bring in your own witnesses to testify for you ***.

When you plead guilty you give up all those rights.

Do you understand that?

[DEFENDANT]: Yes.

* * *

THE COURT: [O]ther than what I told you I would sentence you to in the conference I had with your attorney and the State's Attorney[,] has anyone promised you anything else, has anybody forced you to plead guilty today?

[DEFENDANT]: No.

THE COURT: Find the plea of guilty is knowingly and voluntarily given and accepted. Finding of guilty. Judgment on the finding.

* * *

THE COURT: [A]nything you want to say before I impose sentence? ***

[DEFENDANT]: No.

THE COURT. Okay. Based [on] the facts of the case, also your prior history of criminal behavior *** I'm going to sentence you *** to a term of seven years [with the] Illinois Department of Corrections."

On May 11, 2000, defendant moved to vacate his plea, claiming trial counsel: (1) failed to

contact exculpatory witnesses; (2) "became lazy" when counsel failed to obtain an additional $10,000 from defendant's family; and (3) coerced defendant by threatening a 25-year sentence unless he pled guilty. The trial court appointed Colleen Koch, assistant Public Defender, as postplea counsel. At proceedings on July 25, 2000, Koch said: "I have spoken with [defendant] extensively. I spoke with one of his witnesses right now." The witness was defendant's girlfriend Crystal Baggett. Koch also filed a certificate under Supreme Court Rule 604(d) (210 Ill. 2d R. 604(d)), stating she had consulted with defendant to determine his contentions of error as to the plea, examined the trial court record and made amendments to defendant's motion. Koch moved to admit the affidavits of Donnell Black and Laron Smith, who stated defendant had been arrested while merely sitting in a parked car. The judge allowed these documents entered in the case file but found they were not true affidavits as they were not notarized or in proper form.

At the hearing on defendant's motion to vacate the plea, defendant said Schultz failed to investigate or call his exculpatory witnesses and coerced him by saying the judge would not believe the witnesses. Defendant said he had wanted a continuance, but "it seemed like I couldn't get one." Defendant said he thought accepting seven years was "playing it safe," but he had second thoughts after a discussion with Baggett. Defendant admitted on cross-examination that he was not forced to accept the plea and he could have had a trial. Defendant admitted the transcript of the plea hearing was correct where it showed that the judge said: "You could be fined or you could get a penitentiary sentence *and have to serve a period of three years['] mandatory supervised release \*\*\**." (Emphasis added.)

Schultz also testified. He said the Rule 402 conference happened over a period of time,

6

beginning on March 8, 2000, and continuing on April 18 and 19, 2000. Schultz said he discussed the results with defendant in detail at each juncture. Schultz denied telling defendant the police would be believed over defendant's witnesses. He denied telling defendant the witnesses refused to testify. Schultz admitted he did not subpoena the witnesses.

The trial court denied defendant's motion to vacate his plea, finding it was knowing and voluntary. The court found defendant had not suffered ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).

Defendant argued on direct appeal: (1) the factual basis for the charge of armed violence was inadequate; (2) defense counsel was ineffective for failing to argue an insufficient factual basis; and (3) the consecutive sentences violated Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Marshall, slip op. at 1. As noted, we affirmed. Marshall, slip op. at 4.

Defendant filed a *pro se* postconviction petition on April 17, 2003, claiming violations of his rights under the fifth, sixth and fourteenth amendments to the United States Constitution. He argued that postplea counsel: (1) failed to challenge the factual basis for the plea; (2) failed to investigate; and (3) had a conflict of interest. He argued that appellate counsel was ineffective for failing to argue: (1) the police lacked probable cause; (2) he was not advised of his rights under Miranda; (3) the evidence was insufficient to support a conviction of armed violence; and (4) the prosecution withheld evidence favorable to him. Defendant later filed *pro se* supplements to this petition, adding claims of constitutional violations: (1) three years of mandatory supervised release exceeded the terms of his plea agreement; and (2) he was not properly admonished under

7

Supreme Court Rule 402 (177 Ill. 2d R. 402) before the trial court accepted his guilty plea.

The trial court granted defendant's motion to appoint postconviction counsel. Defendant then moved to proceed *pro se*, claiming appointed counsel had declined to argue the grounds defendant wanted. Counsel later filed a certificate under Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)), stating counsel had consulted with defendant and ensured that defendant's *pro se* petition adequately presented his contentions. Counsel attached defendant's 23-page *pro se* addendum and witness affidavits. Baggett stated in her affidavit that Schultz told her his fee for a trial would be $10,000. She said Schultz told defendant that the judge would find him guilty. She said Schultz pressured defendant, who was "tired, hopeless and confused," to accept the plea. In a second affidavit, Baggett said she told postplea counsel that trial counsel had failed to call defendant's exculpatory witness. Baggett said she was present and ready to testify at the hearing on defendant's motion to withdraw his plea but postplea counsel did not call her. The affidavits of Lisa Jordan and Gyrone Addison stated that on August 29, 1999, they saw defendant sitting inside a parked car when police officers approached and arrested him.

On November 14, 2005, the State moved to dismiss defendant's postconviction petition and supplements. On December 15, 2006, defendant moved *pro se* to dismiss the motion. In addition to his earlier claims, defendant argued his constitutional rights were violated by improprieties in the laboratory analysis of the cocaine allegedly recovered from his person.

The trial court granted the State's motion to dismiss, finding defendant's claims were rebutted by the record and he had failed to state substantial violations of his constitutional rights. The court imposed a postconviction filing fee of $90.

Defendant claims on appeal that his petition should have survived the State's motion, arguing: (1) his claims of ineffective assistance of appellate and postplea counsel warranted an evidentiary hearing because: (a) the record showed appellate counsel was ineffective for failing to challenge the voluntariness of the guilty plea, and (b) postplea counsel was ineffective for failing to call Baggett to attest to trial counsel's coercion; (2) the three-year term of mandatory supervised release was not part of his plea agreement; and (3) the imposition of the $90 fee must be vacated because: (a) it lacks statutory authority, (b) section 22-105 of the Code of Civil Procedure (Code) (735 ILCS 5/22-105 (West 2004)), which imposes an assessment of court costs and fees for frivolous lawsuits, does not apply here because the court never deemed his petition "frivolous," and (c) section 22-105 of the Code (735 ILCS 5/22-105 (West 2004)) violates his state and federal constitutional rights: (i) by targeting "prisoners" to the exclusion of other indigent petitioners in violation of the equal protection clause; and (ii) by subjecting indigent petitioners to pecuniary punishment for exercising a State-granted postconviction remedy in violation of the due process right of meaningful access to the courts.

"The [Post-Conviction Hearing] Act provides a three-stage process for the adjudication of post-conviction petitions." People v. Boclair, 202 Ill. 2d 89, 99, 789 N.E.2d 734 (2002). The trial court first determines whether the postconviction petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2000). If it is, the court will dismiss the petition in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2000). If the petition is not dismissed, it proceeds to the second stage, where the trial court may appoint counsel for an indigent defendant. 725 ILCS 5/122-4 (West 2000); Boclair, 202 Ill. 2d at 99. The State then has the option of

moving to dismiss the petition. 725 ILCS 5/122-5 (West 2000); <u>Boclair</u>, 202 Ill. 2d at 99. If the State does not file a motion to dismiss or if the trial court denies the State's motion, the matter proceeds to the third stage where the court may order the petitioner brought before the court for an evidentiary hearing on the merits. 725 ILCS 5/122-6 (West 2000); <u>Boclair</u>, 202 Ill. 2d at 99.

A petition will be dismissed at the second stage of the proceedings where "the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." <u>People v. Hall</u>, 217 Ill. 2d 324, 334, 841 N.E.2d 913 (2005). We review *de novo* the dismissal of a postconviction petition without an evidentiary hearing. <u>Hall</u>, 217 Ill. 2d at 334.

Defendant first claims his petition should not have been dismissed because appellate counsel rendered ineffective assistance in failing to argue his plea was involuntary and coerced by trial counsel. The State argues these claims are barred by the principle of *res judicata* because defendant has merely rephrased the issues resolved on direct appeal, citing <u>People v. Emerson</u>, 153 Ill. 2d 100, 106-07, 606 N.E.2d 1123 (1992), and <u>People v. Williams</u>, 186 Ill. 2d 55, 62, 708 N.E.2d 1152 (1999).

"Because a proceeding brought under the Act is a collateral attack on a judgment of conviction, all issues actually decided on direct appeal are *res judicata,* and all issues which could have been raised in the original proceeding, but were not, are waived." <u>People v. Mahaffey</u>, 194 Ill. 2d 154, 170, 742 N.E.2d 251 (2000). But the doctrine of *res judicata* is relaxed under certain circumstances such as when the alleged waiver stems from the ineffective assistance of appellate counsel. <u>Mahaffey</u>, 194 Ill. 2d at 171.

Here, defendant alleges ineffective assistance of appellate counsel. On direct appeal, we rejected defendant's claim that trial counsel was ineffective for failing to challenge the factual basis for the charge of armed violence. But appellate counsel did not challenge the voluntariness of defendant's plea and this court made no ruling on the issue.

Claims of ineffective assistance of appellate counsel are reviewed under the two-pronged test established in Strickland, 466 U.S. at 687, 694, 80 L. Ed. 2d at 693, 698, 104 S. Ct. at 2064, 2068, and People v. Albanese, 125 Ill. 2d 100, 531 N.E.2d 17 (1988). Appellate counsel renders ineffective assistance where: (1) counsel's failure to raise an issue on appeal was objectively unreasonable; and (2) counsel's decision caused prejudice to the defendant. People v. Jones, 219 Ill. 2d 1, 23, 845 N.E.2d 598 (2006). Appellate counsel need not present every conceivable issue or nonmeritorious issues. Jones, 219 Ill. 2d at 23. We review the underlying merits of a defendant's claim to ascertain whether he was prejudiced by appellate counsel's failure to raise an issue. Jones, 219 Ill. 2d at 23.

Here, defendant claims there was merit to his claim that his plea was involuntary. Due process requires a guilty plea to be entered voluntarily and knowingly by the defendant. People v. Kidd, 129 Ill. 2d 432, 443, 544 N.E.2d 704 (1989), citing Boykin v. Alabama, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). A trial court cannot accept a guilty plea unless it substantially complies with Boykin and its codification in Supreme Court Rule 402 (177 Ill. 2d R. 402). Kidd, 129 Ill. 2d at 443. Rule 402(a) requires substantial compliance by the trial court in admonishing a defendant on: (1) the nature of the charge; (2) the minimum and maximum sentences; (3) the right to plead not guilty; and (4) the waiver of his right to trial. 177 Ill. 2d R.

402(a). The trial court must determine whether the plea is voluntary before accepting it. 177 Ill. 2d R. 402(b). To do so, the trial judge must state the terms of the plea agreement and the defendant must confirm the terms in open court. 177 Ill. 2d R. 402(b). "Where the trial record refutes [a] defendant's assertions that his plea was not knowingly and voluntarily entered, courts may properly dismiss or deny a defendant's [postconviction] petition." People v. Fern, 240 Ill. App. 3d 1031, 1041, 607 N.E.2d 951 (1993).

Here, the transcript of the plea proceedings shows the trial court gave the admonishments required by Rule 402(a) (177 Ill. 2d R. 402(a)). The trial judge told defendant the charge of armed violence was considered a Class X felony with a minimum sentence of 6 years and a maximum sentence of 30 years. The judge said defendant "could get a penitentiary sentence and have to serve three years['] mandatory supervised release." The judge offered defendant the opportunity to plead not guilty and informed him of the rights he would be relinquishing by pleading guilty, including the right to call witnesses in his behalf. Defendant answered affirmatively the judge's questions of whether he understood the admonishments. Defendant answered "no" when asked if anyone had forced him to plead guilty. The trial court found the guilty plea to be "knowingly and voluntarily given and accepted." This record contradicts defendant's contention that the plea was involuntary.

The transcript of the postplea proceedings shows defendant admitted he was told he could be sentenced to mandatory supervised release in addition to a penitentiary sentence and a $90 fee. There is no merit to defendant's claim that his plea was involuntary. Appellate counsel was not obligated to plead a nonmeritorious issue and defendant suffered no prejudice from counsel's

failure to do so.  See Jones, 219 Ill. 2d at 23.

Defendant relies on People v. Davis, 145 Ill. 2d 240, 244, 582 N.E.2d 714 (1991), to argue appellate counsel was ineffective for failing to argue that trial counsel misrepresented the agreement terms when he did not mention the possibility of mandatory supervised release.  In Davis, the defendant's reason for accepting an "open" plea agreement was to enable him to enter a drug treatment program instead of incarceration.  Davis, 145 Ill. 2d at 245.  Three days before sentencing, an employee of the drug treatment program informed the defendant he would not be eligible.  Davis, 145 Ill. 2d at 245.  Neither the prosecution nor the defense told the trial judge that the defendant's qualification for the treatment program was part of the plea agreement.  Davis, 145 Ill. 2d at 246.  The trial court imposed a 10-year prison sentence.  Davis, 145 Ill. 2d at 243.  Our supreme court determined that the defendant's misapprehension about drug treatment, when considered with other errors, justified reversal of the trial court's denial of defendant's motion to withdraw his guilty plea.  Davis, 145 Ill. 2d at 251.

Here, defendant does not argue and the record does not show that defendant accepted the plea agreement with the understanding that mandatory supervised release would be waived.  The trial court told defendant that a three-year period of mandatory supervised release would accompany a penitentiary sentence.  Defendant said he understood the types of sentences he could receive.  Defendant admitted at the hearing on his postplea motion that he knew mandatory supervised release went with a penitentiary sentence.  The errors in Davis are not present here.

Defendant next argues that postplea counsel was ineffective for failing to call Baggett, who would have stated that trial counsel coerced defendant's plea.  Defendant argues he informed

13

postplea counsel of Baggett's availability, but counsel failed to call her despite Baggett's presence in the courtroom. Defendant argues Baggett made three affidavits, all of which showed trial counsel coerced defendant to accept the plea and disregarded his witnesses.

The State argues the record refutes defendant's claim that postplea counsel was ineffective, based on counsel's certificate under Rule 604(d) (210 Ill. 2d R. 604(d)). In it counsel stated she spoke with defendant extensively, knew of his witnesses and had talked to one witness, presumably Baggett, in court. Postplea counsel also filed an amended motion to vacate the plea, presenting defendant's claims of coercion in his 23-page *pro se* addendum to his petition.

A defendant is entitled to the assistance of counsel in preparing and presenting a motion to withdraw his guilty plea. People v. Janes, 158 Ill. 2d 27, 35, 630 N.E.2d 790 (1994). Supreme Court Rule 604(d) establishes the duties of counsel in assisting a defendant in a motion to withdraw a guilty plea and in protecting the defendant's due process rights (210 Ill. 2d R. 604(d)). Janes, 158 Ill. 2d at 35. As to defendant's claim that postplea counsel should have called his witnesses, we note that "[t]he decision whether to call particular witnesses is a matter of trial strategy and *** will not ordinarily support an ineffective-assistance-of-counsel claim." People v. Patterson, 217 Ill. 2d 407, 442, 841 N.E.2d 889 (2005).

Here, the certificate filed by postplea counsel and the transcript of the hearing on the motion to withdraw the plea support the conclusion that counsel complied with Rule 604(d) (210 Ill. 2d R. 604(d)). Counsel's decision not to call Baggett was not objectively unreasonable. See Jones, 219 Ill. 2d at 23. Counsel had seen Baggett's unsigned and improperly formatted affidavits and had spoken to her in court. Counsel may have concluded that Baggett would not have been

14

persuasive because of her close relationship with defendant, or that her statements were insufficient to overcome the evidence in the record or that cross-examination would have been damaging. Postplea counsel did not render ineffective assistance in her strategic decision not to call Baggett as a witness. See Patterson, 217 Ill. 2d at 442.

Defendant cites People v. Brown, 336 Ill. App. 3d 711, 720, 784 N.E.2d 296 (2002), where this court concluded that a postconviction petition was improperly dismissed at the first stage because counsel was ineffective in failing to call the defendant and witnesses who had corroborated the defendant's alibi in their affidavits. The defendant argued that without those errors, he would have "sufficiently raised the gist of a constitutional claim." Brown, 336 Ill. App. 3d at 720-21. This court said, "We can think of no strategic reason why defense counsel would refuse to present this exculpatory evidence of which he was aware, or prevent petitioner from testifying in his own defense, especially in light of the fact that this case was one of an uncorroborated defense." Brown, 336 Ill. App. 3d at 720. Defendant also cites People v. Tate, 305 Ill. App. 3d 607, 612, 712 N.E.2d 826 (1999), where this court reversed the dismissal of a postconviction petition after finding that defense counsel failed to call a witness whose testimony would have supported an otherwise uncorroborated defense. Tate, 305 Ill. App. 3d at 612. Defendant also cites People v. Makiel, 358 Ill. App. 3d 102, 109, 830 N.E.2d 731 (2005), where this court reversed the dismissal of the defendant's postconviction petition and remanded the matter for an evidentiary hearing. We determined that defense counsel's failure to investigate and subpoena a witness, whose unrebutted affidavit impeached the testimony of the prosecution's main witness, satisfied the prejudice prong of Strickland. Makiel, 358 Ill. App. 3d at 109.

15

These opinions are not controlling here. All three arose from counsel's failure to call witnesses who the defendants claimed had direct knowledge of an alibi or other uncorroborated defense. Here, the only direct knowledge attributed to Baggett is her contention that Schultz told her it would cost $10,000 to take the case to trial. This statement alone does not establish that either trial counsel, postplea counsel or appellate counsel rendered ineffective assistance in failing to call Baggett to testify about Schultz's conduct. All other material in her "affidavit" pertains merely to her observations of defendant. She could not have testified to the circumstances of the plea because she was not present in the plea discussions between defendant and Schultz and she could not have direct knowledge of defendant's interactions with counsel.

We next consider whether the court erred in dismissing defendant's petition despite his claims that the three-year term of mandatory supervised release was not part of his plea agreement. Defendant argues this claim is supported by the record, which shows the trial court never advised him *before* he pled guilty that he would have to serve a term of mandatory supervised release. Defendant relies on People v. Whitfield, 217 Ill. 2d 177, 840 N.E.2d 658 (2005), to argue his prison sentence must be reduced by three years to offset the three-year term of supervised release, giving him the benefit of his bargain—a seven-year sentence. Our supreme court in Whitfield found a substantial violation of the defendant's constitutional rights where the record showed the "defendant's guilty plea was induced by the promise of a specific sentence, which he did not receive." Whitfield, 217 Ill. 2d at 201-02.

The State maintains the transcript here clearly shows defendant was admonished as required under Rule 402 (177 Ill. 2d R. 402). The State points to the court's admonishment: "You

could be fined or you could get a penitentiary sentence and have to serve a period of three years mandatory supervised release." The State claims this clearly shows the imposition of a penitentiary sentence carried with it three years of mandatory supervised release. The State argues neither Rule 402 nor Whitfield requires that mandatory supervised release be mentioned at a precise moment in time. The State argues only substantial compliance with Rule 402 is required, citing People v. Fuller, 205 Ill. 2d 308, 323, 793 N.E.2d 526 (2002).

In Whitfield, the defendant contended that "his constitutional right to due process and fundamental fairness was violated because he pled guilty in exchange for a specific sentence, but received a different, more onerous sentence than the one he agreed to." Whitfield, 217 Ill. 2d at 188-89. The supreme court agreed. Whitfield, 217 Ill. 2d at 189. It fashioned a remedy based on its review of state and federal law that would accord "considerable" deference to the bargain the defendant believed he had struck. Whitfield, 217 Ill. 2d at 205. The court concluded "the appropriate remedy is to modify defendant's [25-year] sentence to a term of 22 years of imprisonment, to be followed by the mandatory 3-year term of supervised release." Whitfield, 217 Ill. 2d at 205. Defendant here claims the same error and seeks the same remedy as in Whitfield.

We believe Whitfield is distinguishable. There, the court never mentioned a 3-year mandatory supervised release requirement to the defendant who pled guilty in exchange for a 25-year sentence. Whitfield, 217 Ill. 2d at 186. Here, the three-year term was mentioned to defendant and he said he understood.

We find a better analogy in People v. Jarrett, 372 Ill. App. 3d 344, 352, 867 N.E.2d 1173 (2007), where the circumstances were similar to those here. In Jarrett, the transcript of the plea

hearing showed the trial judge told the defendant he "was charged with a Class X felony that 'has a possible sentence of from 6 to 30.' " Jarrett, 372 Ill. App. 3d at 345. The judge also said:

" '*There's what's called mandatory supervised release, what we used to call parole, up to 3 years.*' " (Emphasis in original.) Jarrett, 372 Ill. App. 3d at 345-46. When the judge asked the defendant if he understood the penalties, the defendant said "yes." Jarrett, 372 Ill. App. 3d at 346. The written sentencing judgment reflected the term of mandatory supervised release. Jarrett, 372 Ill. App. 3d at 352. The defendant later argued in a postconviction petition he was not informed that a 3-year term of mandatory supervised release would be added to his agreed-on 10-year cap. Jarrett, 372 Ill. App. 3d at 348. On appeal, this court found the admonishment given by the court to be accurate and in compliance with the statutory requirement. Jarrett, 372 Ill. App. 3d 352. " ' [T]he burden is on the defendant to establish that the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression.' " Jarrett, 372 Ill. App. 3d at 352, quoting Davis, 145 Ill. 2d at 244. The court distinguished Whitfield: "we decline the invitation to expand Whitfield, which only applies where the judge failed to *entirely* mention MSR before taking the plea *and* failed to include it in the judgment of sentence." (Emphasis added.) Jarrett, 372 Ill. App. 3d at 352. Here, although the judge did not mention mandatory supervised release at sentencing or in the written sentencing judgment, he did advise defendant of the requirement before accepting the plea. This met the statutory requirement.

We also join with the court in Jarrett in emphasizing that "the trial court's admonishment could have been improved by explicitly stating that MSR was in addition to any sentence he received." Jarrett, 372 Ill. App. 3d at 352. The better practice would incorporate the mandatory

18

supervised release admonition when the specific sentencing is announced. The written sentencing judgment also should include the term of mandatory supervised release. Jarrett, 372 Ill. App. 3d at 352.

Defendant's final claim is the circuit court's assessment of a $90 fee must be vacated. He first argues that the fee should not be assessed because section 22-105 of the Code does not provide for it (735 ILCS 5/22-105 (West 2000)). He also maintains that the fee must be vacated because the trial court neither dismissed his petition at the first stage of postconviction proceedings as frivolous nor explicitly found his petition to be frivolous in the second stage where it was dismissed on the State's motion.

Section 22-105(a) of the Code provides that when a prisoner files a petition under the Act that a court specifically finds to be frivolous, the prisoner is responsible for filing fees and actual court costs. 735 ILCS 5/22-105(a) (West 2000). A "frivolous" pleading is defined under section 105(b) of the Code as a pleading that "lacks an arguable basis either in law or in fact" or contains "allegations *** [that] do not have evidentiary support." 735 ILCS 5/22-105(b)(1), (b)(4) (West 2006). The purpose of the statute is to discourage frivolous petitions and reduce their impact on the efficiency of our judicial system. People v. Gale, 376 Ill. App. 3d 344, 360, 876 N.E.2d 171 (2007).

Here, the trial court concluded: "many of the facts that are listed in all of the various pleadings that the defendant has filed are contradicted by the record itself, both with the plea and other matters that were before this court." But the trial court did not find the petition to be frivolous under section 22-105 and so it erred in imposing the $90 fee.

19

The judgment of the circuit court is affirmed and the $90 fee is vacated.

Affirmed in part and vacated in part.

WOLFSON and GARCIA, JJ., concurring.