2023 IL App (1st) 170845-U
No. 1-17-0845
Order filed December 15, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 2985 01 |
| | ) | |
| LEMAR SCOTT | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices C.A. Walker and Tailor concurred.

**ORDER**

¶ 1    *Held:* Affirmed, as the defendant cannot show counsel provided ineffective assistance, the circuit court properly denied defendant's claims after a *Krankel* inquiry.

¶ 2    Lemar Scott contends trial counsel possibly neglected his case and, under *People v. Krankel*, 102 Ill.2d 181 (1984), seeks new counsel to develop several claims. Scott argues trial counsel (i) unduly influenced his decision not to testify, (ii) failed to call witnesses who could have supported his claim of innocence, and (iii) failed to introduce a 911 tape. In addition, he contends the circuit court conducted the *Krankel* inquiry improperly.

¶ 3    Scott's varied and inconsistent accounts of the events undermine possible prejudice, so his right-to-testify claim does not warrant development. Further, Scott cannot establish possible errors regarding his counsel's failure to call witnesses or introduce a 911 audio tape, as these decisions deserve substantial deference to counsel. Finally, the record refutes his procedural criticisms of the *Krankel* inquiry on remand. We affirm.

¶ 4                              Background

¶ 5    This case comes before us a second time after we remanded for another *Krankel* inquiry before a different judge, following the State improperly participating at the first inquiry. *People v. Scott*, 2015 IL App (1st) 133180, ¶¶ 27, 30.

¶ 6    The State's case established that two men robbed Anthony Thorpe and his niece, Alicia Taylor, at gunpoint during a midnight pizza delivery. One man shot Taylor point-blank, causing significant injuries. Soon after, the police seized Scott in a nearby alley near a gun. Within a day, Taylor and Thorpe identified Scott. Theodore Smith was charged as well. Smith pleaded guilty and, at trial, identified Scott, too. Without DNA, gunshot residue, or fingerprints, the State relied on the testimony of Thorpe, Taylor, and Smith.

¶ 7    In defense, Nathaniel Howard, a resident of the same apartment building as Scott, testified to going to Smith's apartment immediately after hearing gunfire. Londell Favors, another resident, testified that Scott had been with him five minutes earlier. Scott elected not to testify.

¶ 8                      *Krankel* Inquiry on Remand

¶ 9    On remand, the circuit court heard from Scott and trial counsel and reviewed the record. The circuit court dismissed Scott's ineffective assistance claims, finding Scott had to do more than

"basically rearguing everything that was presented and argued" throughout the trial. The court noted the inconsistencies Scott raised were "all presented [***] at a motion [***] or at trial."

¶ 10    Scott raised many claims at this remand inquiry, including claims he did not raise at the initial inquiry. He pursues the following three on appeal.

¶ 11                                    Right to Testify

¶ 12    Scott let known his desire to testify at pre-trial proceedings before the trial court, though he declined to testify after being admonished at trial. When the trial court asked Scott whether it was his "choice not to testify," Scott responded, "Yes, sir."

¶ 13    At the *Krankel* inquiry on remand, Scott stated that his decision not to testify had been influenced by trial counsel having spoken with his mother. Scott claimed that after repeatedly expressing his desire to testify, trial counsel "went on to [his] mother, who had a child on her deathbed," and told her to advise Scott against testifying. Scott felt he could not "go against [his] mother's wishes at that time."

¶ 14    Scott also stated that trial counsel felt that Scott would "lose the case flat out" if he testified. Counsel did not deny giving Scott this advice. Indeed, counsel said, "Mr. Scott is a hundred percent correct," that counsel believed Scott would lose should he testify.

¶ 15                               Proposed Defense Witnesses

¶ 16    Scott raised trial counsel's failure to call "key witnesses," Margie Smiley, Rissa Phillips, and Jessica Jackson. According to Scott, Smiley would have testified that Scott spoke to her while selling marijuana in the hallway, and she heard gunfire "minutes later." Scott claimed Phillips would testify that he was "in the apartment hallway [***] at the time of the shooting" and saw one person committing the robbery. Jackson had called 911 that night.

¶ 17                                911 Tape

¶ 18    Several times before trial, Scott asked about the 911 call recording from the night of the robbery. His counsel repeatedly delayed pending its receipt. Neither the transcript of the tape of the 911 call nor agreement on what the tape contains appears in the record. At trial, a Chicago police officer testified that Jackson spoke about multiple offenders when interviewed that night.

¶ 19    At the *Krankel* inquiry on remand, trial counsel stated the 911 call "didn't have a good description" of anything or anyone. Also, Scott claimed the caller, Jackson, saw "one person out there." Scott stated that he had repeatedly asked about the 911 tape, and counsel told him he was "sav[ing] them for trial." Scott believed the 911 tape contained exonerating evidence, but his trial counsel did not "see the 911 tapes helping us at all."

¶ 20                                Analysis

¶ 21    To show that trial counsel provided ineffective assistance, a defendant must prove that "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). At this first stage under *Krankel*, a defendant needs only show "possible neglect" by trial counsel. *People v. Moore*, 207 Ill.2d 68, 78 (2003). Failure to make the required showing for both deficient performance and sufficient prejudice defeats an ineffectiveness claim. *Strickland*, 466 U.S. at 697. We review denial of ineffective assistance claims under a manifest error standard. *People v. Jackson*, 2020 IL 124112, ¶ 98.

¶ 22                             Right to Testify

¶ 23 Scott fails to show possible prejudice for three reasons. To begin, he sought to testify he was in the area selling marijuana and had gone outside shortly before the robbery. On appeal, he describes this defense as "wrong place, wrong time." But Scott's proffered testimony does not

explain why he was apprehended next to the weapon used in the robbery. That is, Scott had no explanation for why he was in the wrong place at the wrong time, not once but twice: first at the scene of the shooting, then at a nearby alley next to the gun.

¶ 24    Further, one of Scott's proposed witnesses would have testified to Scott's presence "in the apartment hallway [***] at the time of the robbery," undermining Scott's version of events. Likewise, Scott's proposed testimony finds no corroboration within the record. Again, Scott claims that he would have testified he was attempting to sell marijuana to the victims and that—although he did not commit the crime—he was the last person the victims saw before the robbery. No other witness, not even Scott's witnesses, ever mentioned seeing anyone selling marijuana.

¶ 25    Finally, at the hearing on his motion to quash arrest, Scott's testified to a different account. At that time, Scott asserted he was inside during the robbery. Specifically, he went outside "after the shots were fired." Thus, this testimony undermined the evidentiary value of his *Krankel* testimony. See *People v. Sturgis*, 58 Ill. 2d 211, 216 (1974) (permitting State to impeach defendant at trial with testimony from hearing on motion to suppress).

¶ 26    As to Scott's claimed errors, advising a client not to place themselves at the scene falls within *Strickland*'s permissible "wide range of professional conduct." See *Strickland*, 466 U.S. at 691. Scott's desire to testify that he was the last person the victims saw before the robbery suggests that the trial counsel's advice was objectively reasonable. Moreover, typically, a defendant who declines to testify after being admonished may not claim interference with their decision. See *People v. Knapp*, 2020 IL 124992, ¶ 54. When admonished, Scott said he "wish[ed] not to testify." Though brief—asking once if Scott understood—nothing more is required if a "defendant's

election against testifying was unequivocal." *People v. Harris*, 2021 IL App (4th) 180522-U, ¶ 16. Scott's refusal was unequivocal.

¶ 27    Finally, although Scott raises a unique factual allegation that his counsel spoke to his mother about whether he should testify, he does not argue counsel manipulated that relationship. Scott stated that he "felt [he] could not go against [his] mother's wishes" because she had a deathly ill child. But courts determine the objective reasonableness of counsel's actions "on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. Nothing indicates that counsel speaking with Scott's mother was improper.

¶ 28    Scott failed to show possible error and possible prejudice so denial of this claim was not a "clearly evident, plain, and indisputable" error. *Jackson*, 2020 IL 124112, ¶ 98.

¶ 29                              Proposed Defense Witnesses

¶ 30    Next, Scott argues counsel failed to call three "key witnesses" to testify: Jessica Jackson, Margie Smiley, and Rissa Phillips. According to Scott, Jessica Jackson, who made the 911 call, would have identified "a single offender." Margie Smiley, a resident of Scott's building with whom Scott spoke that night, would testify Scott was "in and out of the building selling marijuana." Rissa Phillips, Londell Favors' niece, would have testified similarly. Scott argues these three witnesses could have "certainly strengthened" his "wrong place, wrong time" defense.

¶ 31    *Strickland* demands broad deference to the "reasonableness of counsel's challenged conduct" when assessing performance. *Strickland*, 466 U.S. at 690. The defendant must "overcome the presumption that [***] the challenged action might be considered sound trial strategy." (Internal quotation omitted.) *Id.* at 689. Usually, whether to call a witness involves a strategy that "will not support a claim of ineffective representation." *People v. Vidaurri*, 2023 IL App (1st)

200857, ¶ 70. Courts will defer to trial counsel's decision "unless the chosen trial strategy is so unsound that counsel fails to conduct any meaningful adversarial testing." *People v. Deloney*, 341 Ill.App.3d 621, 634 (2003). Counsel may be deemed ineffective, however, for failing "to call witnesses whose testimony would support an otherwise uncorroborated defense." *People v. Tate*, 305 Ill.App.3d 607, 612 (1999).

¶ 32    None of Scott's proffered witnesses are sufficient to "overcome the presumption" that trial counsel acted reasonably. *Strickland*, 466 U.S at 689-90. Scott alleges that the witnesses "would support [the] otherwise uncorroborated defense" of him selling marijuana to the victims. See *Tate*, 305 Ill.App.3d at 612. Yet, as would these witnesses, Londell Favors and Nathaniel Howard placed Scott at the scene. Whether Scott was selling marijuana is immaterial to his presence, which the defense witnesses already established.

¶ 33    Phillips had the same vantage point as her uncle, so that she could add nothing new. Further, Phillips' testimony undercuts Scott's version by putting him "in the apartment hallway" at the time of the robbery. While Scott alleges Smiley would testify that he was "in and out of the building selling marijuana," that falls short of the kind of critical "alibi witness" needed to establish ineffective assistance. *Tate*, 305 Ill.App.3d at 612. On the contrary, Smiley's testimony would place Scott near the crime almost immediately before it transpired, like the witnesses at trial. Nothing indicates failing to call these witnesses was "so unsound that counsel fail[ed] to conduct any meaningful adversarial testing." *Deloney*, 341 Ill.App.3d at 63

¶ 34    The testimony of Scott's witnesses is duplicative at best and incriminating at worst. Trial counsel's failure to introduce them was not objectively unreasonable. Given the entirety of the

record, the denial was not a "clearly evident, plain, and indisputable" error. *Jackson*, 2020 IL 124112, ¶ 98.

¶ 35                                      911 Tape

¶ 36    Scott argues trial counsel should have introduced Jackson's 911 call because it contained specific, exculpatory evidence. The record is vague on what was said on the call. Scott alleges the caller mentioned she saw one person commit the robbery. His counsel said the call "was not an issue that was going to turn on the outcome of the case." Officer O'Connor, who spoke with Jackson, testified at trial that Jackson mentioned multiple offenders, contradicting Scott's allegation that she reported seeing one individual.

¶ 37    Failure to introduce "important exculpatory evidence" may constitute deficient performance. See *People v. York*, 312 Ill.App.3d 434, 437 (2000). Usually, courts view the decision to introduce evidence as a "matter[] of trial strategy that [is] generally immune from ineffective assistance claims." *York*, 312 Ill.App.3d at 437. Scott needed to establish that the content was "important exculpatory evidence" reasonable counsel would have introduced to overcome this "heavy measure of deference to counsel's judgments" and prove possible error. *Id.* Scott has not come near this "heavy measure of deference."

¶ 38    Moreover, trial counsel's decision not to introduce the tape came within his professional judgment. While counsel believed the tape might be "beneficial," counsel heard nothing helpful after review. This indicates counsel acted reasonably by seeking out the evidence, considering it, and making the strategic choice not to introduce it, refuting possible error. A court must assess the "challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. Doing so, we find that trial counsel did not possibly err.

¶ 39    Even if Scott's allegation that Jackson saw one offender was true, it would be cumulative. "Trial counsel's performance cannot be considered deficient because of a failure to present cumulative evidence." *People v. Henderson*, 171 Ill.2d 124, 155 (1996). Nothing in the record indicates that Theodore Smith was physically near Scott at the time of the robbery. Scott cannot show possible prejudice.

¶ 40                          Sufficiency of Inquiry on Remand

¶ 41    Finally, Scott claims the circuit court did not conduct a sufficient factual inquiry on remand because it primarily relied on findings from the initial inquiry. Whether a court properly conducted a *Krankel* inquiry presents a question of law that we review *de novo*. *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 42    Scott mischaracterizes the circuit court's review. A judge must "examine the factual basis of the defendant's claim." *Moore*, 207 Ill.2d at 77-78. If the court determines "the claim lacks merit or pertains only to matters of trial strategy," it may deny the motion. *Id.* at 78. Further, "a trial court generally has broad discretion over the manner in which it conducts its hearings." *In re T.R.*, 2019 IL App (4th) 190529, ¶ 87.

¶ 43    The circuit court repeatedly asserted that it "reviewed the court file," "everything" from "all [of Scott's] arguments," and "examine[d] the factual basis" of Scott's claim before concluding that he offered nothing not presented and argued before or at trial. See *Moore*, 207 Ill.2d at 77–78. The circuit court afforded Scott the requisite "full consideration" on remand.

¶ 44    Affirmed.