2020 IL App (1st) 170465-U

No. 1-17-0465

Third Division
March 11, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | No. 12 CR 16867 |
| | ) | |
| v. | ) ) | Honorable Kenneth J. Wadas, |
| DONNIE MOORE, | ) | Judge, presiding. |
| | ) | |
| Defendant-Appellant. | ) | |

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**O R D E R**

¶ 1    *Held*: The summary dismissal of defendant's *pro se* postconviction petition is reversed and the cause remanded where defendant presented an arguable claim of ineffective assistance of counsel based on counsel's failure to call three alibi witnesses at trial.

¶ 2    Following a jury trial, defendant Donnie Moore was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2012)) and attempt first degree murder (720 ILCS 5/8-4(a), 5/9-1(a)(1) (West 2012)) in connection with a shooting on January 8, 2006. He was sentenced to 75 years' imprisonment on the murder charge, which included a 25-year enhancement for the

personal discharge of a firearm that caused death, and to 50 years' imprisonment on the attempt murder charge, which included a 20-year enhancement for the personal discharge of a firearm, for an aggregate sentence of 125 years' imprisonment. This appeal concerns defendant's *pro se* postconviction petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). Defendant claims that the trial court erred in summarily dismissing his petition because (1) he made a colorable claim of actual innocence based on Eddie Fenton's affidavit; (2) he made an arguable claim of ineffective assistance of trial counsel based on affidavits from three alibi witnesses; and (3) his 125-year sentence violated the eighth amendment and the proportionate penalties clause. For the following reasons, we reverse and remand for second-stage proceedings.

¶ 3                                    I. BACKGROUND

¶ 4                                  A. Evidence at Trial

¶ 5        Defendant's arrest and prosecution arose from a shooting on January 8, 2006, which killed Jonathan Bowman and injured Patrick Collier (also known as Patrick Bullock). The matter proceeded to a jury trial, at which the following evidence was presented.

¶ 6        Anthony Butler testified that he attended a party on the 7000 block of South Morgan Street at around 9:30 a.m. on the night of the shooting. Defendant and a person named "Dirt," who was later identified as Nathaniel Whiteside, were also present. The party was at the house of Eddie Fenton's sister, Kawanna. Butler testified that he, defendant, Fenton, and Whiteside helped pay for the DJ and the liquor at the party, but they were also charging people at the door and searching people for weapons. He stated that this caused some tension among those that refused to be searched, and eventually, a fight broke out outside. When Butler went outside, he saw his friend, Nef, on the ground, and another man, whom he later learned to be Bowman,

walking away. Butler approached Bowman and tapped him on the shoulder. When Bowman turned around, Butler punched him in the face. A larger fight broke out, during which several others hit Bowman. Butler then saw Fenton push everyone out of the way and fire six or seven shots at Bowman, who was lying on the ground. Butler ran away towards the corner of the block and heard more shots as he fled. About 5 or 10 minutes after the shooting, he observed several people in an alley trying to hit defendant with a golf club. He saw defendant take the club and start swinging it back at them. Butler then left the area. Butler testified that he did not have a gun and he did not see Bowman with a gun. He also stated that he had "no idea" if anyone other than Fenton fired a gun that night. Butler also testified as to his grand jury testimony on May 8, 2012. He confirmed that he told the grand jury that defendant was one of his friends and that he saw defendant take a golf club from some people and start swinging it at them.

¶ 7    On cross-examination, Butler acknowledged that he spoke with detectives in 2012 regarding his observations from the night of the shooting. He did not remember telling detectives that he observed Whiteside and an individual named Boonie shooting a gun as well as Fenton. Butler testified that he did not see defendant shooting a gun.

¶ 8    Charles Richardson testified on the evening of January 7, 2006, he was sitting in a car outside Bowman's house with Bowman and Parnell Williams. He observed a party going on at Kawanna's house, which was about four or five houses down the street. He referred to the party as a "kiddie kill 'em up" party, which meant that "something *** bad was going to happen that night." Richardson and Williams went inside Bowman's house. Richardson told Bowman that he should also come inside, but Bowman went to the party. Richardson later heard shots fired outside. He looked out the window and saw Bowman trying to get into his

car. He observed people running from the party and two men shooting at Bowman. Richardson identified defendant as one of the shooters. He also heard defendant say Bowman was "going to die tonight." He went outside and yelled at Bowman, and the gunmen began firing at his house. Richardson went back inside and told his fiancée to take their children upstairs. He then went back outside and saw Bowman laying in the street. A Cadillac Escalade pulled up and Collier jumped out and tried to pull Bowman in, but Collier was shot in the arm. Collier left in the car without Bowman. A third gunman came down the street and began shooting at Bowman. That person's gun jammed, so he loaded a new clip and fired two additional shots at Bowman. The shooters then fled, and Richardson pulled Bowman out of the street. Police and paramedics arrived. Bowman was transported to the hospital, where he died from his injuries several days later.

¶ 9        Richardson further testified that he went to the police station on May 17, 2007, and viewed a physical lineup, from which he identified one of the shooters. On March 16, 2012, Richardson identified defendant and Fenton in a photo array as two of the shooters. He later testified before a grand jury that defendant and Fenton shot and killed Bowman.

¶ 10        On cross-examination, Richardson acknowledged that law enforcement came to his house with photos, but he was unable to pick out anybody from the shooting in those photos. He stated that he did not see anyone beating up Bowman.

¶ 11        Collier testified that during the early morning hours of January 8, 2006, he was sitting in his car near the party with his cousin and Bowman. They eventually left the car and walked over to the party. Collier and his cousin paid the entry fee and submitted to a search, but Bowman refused. Collier and his cousin went into the party without Bowman but decided to leave after 10 minutes because it was too crowded. As they exited, Collier observed an

altercation five or six guys beating up one guy who was on the ground in front of the house. He made his way to the street and eventually saw two people shooting the guy on the ground. The only shooter he could see was Fenton. The other person had his back to Collier. He eventually recognized the man on the ground as Bowman. Fenton turned around and said something to Collier and shot at him. Collier was hit in the left forearm as he shielded his face. After he was shot, Collier ran to his car, which was parked about four houses away. His cousin made it to the car and drove him to the hospital.

¶ 12     Collier also testified that he called the police on January 12, 2006 and told them that Fenton had shot him. On April 12, 2006, he was shown a photo array that contained defendant's photo, but he did not identify him. Collier also did not identify defendant in court as one of the shooters. On May 17, 2007, he went to the police station and identified Fenton out of a physical lineup. Finally, he stated that he testified before the grand jury and identified Fenton as the one who shot himself and Bowman.

¶ 13     On cross-examination, Collier testified that defendant did not shoot him. He stated that at the time he drove a Cadillac Deville. He stated that he did not attempt to pull Bowman into his car.

¶ 14     Rhonda Scott testified that she was arrested on a contempt warrant for not appearing in court to testify in this case. She stated that on January 8, 2005, when she was 12 years old, she went to a party with her sister and some guys from the neighborhood. She did not know the people who threw the party and it was crowded. At the party, she drank alcohol and smoked marijuana. After she had been at the party for several hours, she heard an argument occurring outside the house. She then heard shooting and dropped onto the floor. Once the shooting stopped, she walked out the front door and ran towards the gangway to find her sister. As she

was running, she saw Fenton shooting at a guy who was running away. She met up with her sister in the street in front of the house and they knelt together next to the car they came in. As they knelt by their car, Scott heard additional gunshots and saw Dirt and a few other people with guns. A man she came with to the party also arrived at the car and knelt with her and her sister. Defendant approached them with a gun and asked the man "who he was with." The man responded that, "I'm not with them. I'm with you all," and ran away. Defendant shot at the man approximately five times but did not hit him. The police soon arrived.

¶ 15    Scott further testified that she went to the police station on February 20, 2006, and identified defendant as one of the shooters from a photo array. She stated that law enforcement has tried to talk to her about this case on multiple occasions over the years. She stated that she testified before the grand jury on July 25, 2012, where she identified Fenton, Dirt, and defendant from photos.

¶ 16    On cross-examination, Scott testified that she did not know who Fenton was shooting at at the time but later learned that it was Bowman. She stated that she first saw defendant when he came up to the car and questioned the man she was with. She also testified that she previously did not come to court because she did not want to be involved in the case.

¶ 17    Whiteside testified that he, Fenton, and defendant planned the party at Kawanna's house and all pitched in to provide the DJ and liquor. He admitted that he, defendant, and Fenton all carried firearms on the night of the party. When a fight broke out in the front yard, he went to the front door and saw Kawanna and another of Fenton's sisters fighting with someone he did not know. Fenton entered the fight and started shooting. Defendant also fired several shots at a person who was on the ground in the street. Whiteside shot twice into the air to defend himself, then ran to his car and left.

¶ 18    On cross-examination, Whiteside testified that he drank a lot at the party. He stated that Butler was not involved in the fight and was inside the house during the fight. He also stated that his gun did not jam and he did not reload his gun. He admitted that he was arrested as a suspect in the shooting. He did not see Collier get shot.

¶ 19    Former Chicago police detective Anthony Powell testified interviewed Scott in February 2006.  Scott identified Fenton as the person who shot Bowman and defendant as the person who approached her by the car. In April 2006, Collier was shown a photo array that contained defendant, but he was unable to make an identification. The case "went cold" due in part to the lack of cooperation from witnesses but was reopened in May 2007. On May 12, 2007, Collier was shown another photo array and he identified Fenton as one of the shooters. He did not identify defendant. Fenton was arrested, and Collier identified him in a physical lineup. On May 18, 2007, Richardson was shown a photo array but was unable to make an identification. At this time, Collier was no longer cooperating with law enforcement and Scott's mother was not allowing law enforcement to speak with her daughter about the case. Fenton was released from custody due to the lack of cooperation from witnesses. The case against went cold. None of these photo arrays were preserved, and they were unavailable at trial. The case was reopened again in 2011. On August 3, 2011, Collier identified Fenton as the individual who shot him and Bowman. Powell testified that he retired around this time period and the case was transferred to Detectives Oscar Arteaga and Ed Carroll.

¶ 20    Detective Arteaga testified that on March 16, 2012, he spoke with Richardson, who identified Fenton and defendant as the shooters. He testified that Steven Patrick referred him to Butler, who identified Fenton as a shooter and defendant as the man who hit someone with a golf club.

¶ 21        Defendant moved for a directed verdict, which the court denied. The defense then presented its case by way of stipulation.

¶ 22        The parties stipulated that if called Detective Roger Murphy would testify that he interviewed Richardson on January 12, 2006. Richardson told Murphy that he went outside after hearing hear a "ruckus," saw people fighting in the street, and later heard gunshots. He looked out a window and saw Bowman laying on the ground. He saw two men approach Bowman with guns, but one of the guns jammed.

¶ 23        The parties stipulated that if called Detectives Arteaga and Carroll would testify that they prepared supplemental reports on May 8, 2012, after conducting an interview with Butler. Butler told them that he was inside dancing when he heard that a fight broke out outside. He went outside and saw a man lying on the ground and another man walking away. Butler tapped him on the shoulder and when the man turned around, punched him in the face. Butler heard gunshots and saw Fenton shoot the person on the ground at least seven or eight times. Butler walked away and heard someone shout to shut the party down. Someone then came outside and shot at the person who said to shut the party down. Butler also saw both Dirt and Boonie shooting that night. The report did not indicate that Butler was drunk at the time of the shooting.

¶ 24        The jury ultimately found defendant guilty of first degree murder and attempt first degree murder. The jury additionally found that defendant personally discharged a firearm while committing the offenses.

¶ 25        The court heard testimony from several witnesses during defendant's sentencing hearing, including Bowman's sister who presented a victim impact statement and multiple police officers who testified about defendant's extensive criminal history.

¶ 26       In imposing sentence, the court stated that the minimum sentence of 66 years was not appropriate in light of defendant's criminal history, which was "almost continuous" since 1999. The court also analyzed the statutory factors in mitigation but found that none of them applied to defendant.

¶ 27       The court sentenced defendant to 50 years on the murder charge with a mandatory 25-year enhancement and 30 years on the attempt murder charge with a mandatory 20-year enhancement for total length of 125 years. The court denied defendant's motion to reconsider the sentence.

¶ 28                                   B. Procedural History

¶ 29       Following his conviction, defendant filed a direct appeal, claiming that there was insufficient evidence to sustain his conviction and that the trial court erred in (1) denying his motion to dismiss after the State failed to preserve identification evidence, (2) refusing to bar testimony based on the unpreserved evidence, (3) admitting evidence from co-defendant Fenton's confession, and (4) refusing to allow testimony of a witness' coercion. This court affirmed his convictions. *People v. Moore*, 2016 IL App (1st) 133814. Our supreme court denied his petition for leave to appeal.

¶ 30       On October 26, 2016, defendant filed the instant *pro se* postconviction petition. That petition raised the following five claims: (1) he was actually innocent based on newly discovered evidence; (2) the State committed a *Brady* violation by not disclosing that prosecutors promised Butler that his testimony would assist his brother in receiving a reduced sentence; (3) trial counsel was ineffective for failing to call three available alibi witnesses; (4) trial counsel was ineffective for failing to file a motion to suppress the identification testimony of Scott and Richardson; and (5) he received an unconstitutional *de facto* life sentence under

*Miller v. Alabama*, 567 U.S. 460 (2012) because he was 18 years old at the time of the shooting. In support of his motion, defendant attached affidavits from Fenton, and three alibi witnesses, Kenyotta Willis, Derek Walker, Sherrie Bishop. He also attached a federal Rule 35 motion for reduction of sentence filed on behalf of Butler's brother.

¶ 31     Fenton's affidavit states that he was at the party on the night of the shooting. At some point, defendant and Kenyotta left to purchase more marijuana. While they were gone, an altercation between Whiteside and another person occurred. As Fenton approached the fight, someone fired gunshots in his direction. He, Whiteside, and Victor "Scoop" Robinson all pulled out their guns. Everyone started shooting at Bowman, and Fenton and Robinson shot Bowman while he was on the ground. Fenton also fired at another unknown individual who was shooting at him. Fenton averred that he lied to the police about defendant being present with a gun, and that defendant was not actually there when the shooting occurred. Finally, Fenton averred that he told his attorney to contact defendant's attorney because defendant was being charged with a crime that he, Whiteside, and Robinson had committed.

¶ 32     Willis averred that she was also at the party and that defendant asked her to take him to Walker's house to purchase marijuana from Walker's neighbor. Willis drove defendant to the house located on the 7100 block of South Champlain Avenue, where she, defendant, and Walker smoked a couple of "blunts" and talked for approximately 45 minutes to an hour before driving back to the party. Upon their return, Bishop approached the car and told them that Fenton, Whiteside, and Victor Robinson had shot two people. Bishop also told them that Bowman was killed. Defendant exited that car and "some guys approached [him] and begin [*sic*] swinging a golf club at [him], and then a fight started." The police arrived and everyone

ran away. Willis spoke with defendant's attorney several times about her account of the night and told him that she would be willing to testify. However, counsel never called her to testify.

¶ 33    Walker averred that he was at his house on the night of the shooting when defendant and Willis came over to purchase marijuana from his neighbor. They smoked a couple of "blunts" and talked in the car for about 30 to 45 minutes. Defendant and Willis then left to go back to the party. Walker also told defendant's counsel that he would testify, but counsel never contacted him about do so.

¶ 34    Bishop averred that she was at the party when a fight broke out in the front yard and street. Fenton, Whiteside, and another unknown individual started shooting. When defendant and Willis drove up, she told them what had just occurred. Defendant exited the car and "a couple guys approached him swinging a golf club at him." Bishop did not see defendant with a gun, and he was not there during the shooting. She told defendant's counsel that she would be willing to testify but she was never called.

¶ 35    The affidavits of Fenton, Willis, and Walker state that the statement was given voluntarily and that they would attest to the facts therein if called to testify.

¶ 36    On January 6, 2017, the trial court filed a written order summarily dismissing defendant's petition on the basis that his claims were either waived or were frivolous and without merit. Specifically, the court found that Fenton's affidavit did not constitute new evidence because his testimony could have been obtained sooner through due diligence and the affidavit was not so conclusive that it would change the result on retrial because multiple witnesses identified defendant as being present at the shooting and Fenton's own statement to police, which was partially presented at trial, inculpated defendant. As to defendant's claim of ineffective assistance of counsel, the court concluded that defendant waived the claim by failing to raise

it on direct appeal and each affiant explicitly states that counsel spoke with them and declined to call them as witnesses, suggesting that counsel's decision was based on trial strategy and thus not deficient.

¶ 37                                    II. ANALYSIS

¶ 38        On appeal, defendant argues that the trial court erred in dismissing his postconviction petition because (1) he raised a colorable claim of actual innocence; (2) he raised the gist of a claim of ineffective assistance of counsel based on failure to call alibi witnesses; and (3) his 125-year aggregate sentence violates the eighth amendment and the proportionate penalties clause.

¶ 39        The Act provides a method for a defendant to collaterally attack a conviction by asserting it resulted from a "substantial denial" of his constitutional rights. 725 ILCS 5/1221 (West 2016); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A postconviction proceeding in a noncapital case has three stages. *Hodges*, 234 Ill. 2d at 10. At the first stage, a trial court may summarily dismiss a postconviction petition within 90 days of its filing if it "determines the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2). At the second stage, counsel can be retained or appointed, and defendant must show that his petition makes a substantial showing of a constitutional violation. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 17. During this stage, the State can participate and either answer the petition or move to dismiss. *Id.* At the third stage, the court holds an evidentiary hearing and determines whether the defendant is entitled to relief. *Id.*

¶ 40        In this first stage, the court must initially determine if the petition "alleges sufficient facts to state the gist of a constitutional claim." *People v. Allen*, 2015 IL 113135, ¶ 24. To survive summary dismissal, a defendant need only present a limited amount of detail in the petition,

which is a "low" threshold in accordance with the reality that petitions are typically drafted by *pro se* petitioners with little legal knowledge or training. *Hodges*, 234 Ill. 2d at 9. Additionally, at this stage, "[u]nless the petitioner's allegations are affirmatively refuted by the record, they are taken as true." *People v. Domagala*, 2013 IL 113688, ¶ 35. A petition is frivolous or patently without merit only when it "has no arguable basis in either fact or law." *Hodges*, 234 Ill. 2d at 11-12. Additionally, if a defendant's claim is procedurally barred under either *res judicata* or forfeiture, which are both conclusions of law, that claim is considered "frivolous" or "patently without merit." *People v. Blair*, 215 Ill. 2d 427, 445 (2005). We review *de novo* the summary dismissal of a defendant's postconviction petition. *Allen*, 2015 IL 113135, ¶ 19.

¶ 41    Because we find that defendant's claim of ineffective assistance of counsel renders his *pro se* petition not frivolous or patently without merit, we first address that claim. Defendant contends that he set forth an arguable claim of ineffective assistance of trial counsel based on counsel's failure to call Willis, Walker, and Bishop as alibi witnesses. We agree.

¶ 42    We reject the State's argument that defendant has forfeited this claim because he could have raised it on direct appeal. The State contends that defendant could have made this argument and taken into consideration the alibi witnesses' prospective testimony. However, if defendant had brought this claim on direct appeal, it would have been based purely on speculation. Thus, it is likely that we would have rejected it due to an inadequate and underdeveloped record and we would have suggested that defendant pursue this claim in a collateral proceeding. See *People v. McGath*, 2017 IL App (4th) 150608, ¶¶ 40-43 (finding that the "defendant's claim of ineffective assistance of counsel [was] better suited for resolution in a collateral proceeding" because adjudication should be based on a complete and adequate record, "not on judicial speculation"); see also *People v. Tate*, 2012 IL 112214, ¶¶

13-15. For that reason, we do not consider this claim forfeited. *People v. Veach*, 2017 IL 120649, ¶ 47 ("Procedural default does not, however, preclude a defendant from raising an issue on collateral review that depended upon facts not found in the record.").

¶ 43        At the first stage of postconviction proceedings, a defendant need only set forth the gist of a claim, and his petition survives summary dismissal if: "(i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17; *Tate*, 2012 IL 112214, ¶¶ 18-20. This requirement is based on the well-known standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); however, as espoused in *Tate*, we apply a more lenient standard in first stage proceedings. *Tate*, 2012 IL 112214, ¶ 19. It is defendant's burden to satisfy both prongs. *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998).

¶ 44        Under the first prong, the defendant must prove that his counsel's performance was arguably deficient because it fell below an objective standard of reasonableness under the prevailing professional norms. *People v. Ramirez*, 2018 IL App (1st) 152125, ¶¶ 15-16. There is a strong presumption that counsel's performance fell within a wide range of reasonable assistance. *Strickland*, 466 U.S. at 690.

¶ 45        The second prong requires that the defendant establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding arguably would have been different." *Strickland*, 466 U.S. at 694. "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome—or put another way, that counsel's deficient performance rendered the result of [the proceedings] unreliable or fundamentally unfair." *People v. Evans*, 209 Ill. 2d 194, 220 (2004).

¶ 46     Matters of trial strategy typically will not support a claim of ineffective assistance of counsel, and counsel's decisions as to which witnesses to call at trial are strategic ones. *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79. Attorneys have been found to be ineffective where they have failed to present exculpatory evidence at trial, such as witnesses who would corroborate the defendant's defense. *People v. King*, 316 Ill. App. 3d 901, 913 (2000); *People v. O'Banner*, 215 Ill. App. 3d 778, 790 (1991).

¶ 47     However, our supreme court has stated that arguments regarding counsel's trial strategy are more appropriate for second stage proceedings, "where both parties are represented by counsel, and where the petitioner's burden is to make a substantial showing of a constitutional violation." *Tate*, 2012 IL 112214, ¶ 22. Nonetheless, we explain why the State's argument that defendant's counsel's failure to call these witnesses was a strategic decision fails at this stage.

¶ 48     In this case, the affidavits of Willis, Walker, and Bishop, taken as true, establish that defendant was not actually present at the time of shooting because he was purchasing marijuana at Walker's residence. Moreover, the affidavits indicate that counsel was aware they could establish defendant's alibi but did not call any of them to testify at trial. Defendant also claims that he told counsel about these three witnesses.

¶ 49     The circumstances in the instant case are akin to those in *People v. Tate*, 305 Ill. App. 3d 607 (1999) and *People v. Cleveland*, 2012 IL App (1st) 101631.

¶ 50     In *Tate*, the defendant was convicted of murder and attempt murder related to a shooting. 305 Ill. App. 3d at 609-10. The defendant's postconviction petition alleged that trial counsel's failure to call three alibi witnesses constituted ineffective assistance. The matter advanced to the second stage of postconviction proceedings, where the circuit court dismissed the petition. *Id.* at 610. On appeal, this court found that defendant made a substantial showing of a

constitutional violation and should have been afforded an evidentiary hearing. *Id.* at 612. In so concluding, the court found that the affidavits supported the defendant's theory that he was misidentified as the shooter. *Id.* Further, the court stated, "The record does not reflect whether counsel made a professionally reasonable tactical decision not to call witnesses or whether, as defendant maintains, counsel failed to call them as the result of incompetence." *Id.*

¶ 51    In *Cleveland*, this court similarly concluded that the defendant made a substantial showing of ineffective assistance of counsel based on counsel's failure to call several potential alibi witnesses at trial. 2012 IL App (1st) 101631, ¶¶ 60-61. There, the defendant was convicted of murder and attempt murder following a shooting. The defendant's postconviction petition, which the circuit court dismissed at the second stage, included three affidavits: one from an individual who claimed that defendant was with her on the night of the shooting and two from individuals with information supporting defendant's alibi. *Id.* ¶¶ 14, 18-19. All three affiants also averred that they spoke with defendant's trial counsel but were never called to testify. *Id.* The court noted that the record was "barren of any reasonable strategy that may have been employed by counsel in calling no witnesses and presenting no evidence." *Id.*

¶ 52    In those cases, this court found that the defendants had made substantial showings on their ineffective assistance of counsel claims, which were factually very similar to the claim here, and the claims should advance to a third-stage evidentiary hearing. Here, we are still at the first stage of postconviction proceedings, and with similar facts, defendant's claim surely meets the lower level requirement of only a gist of a constitutional claim.

¶ 53    We also distinguish several cases where we have found a trial counsel's decision not to call alibi witnesses to be reasonable. In *People v. Lacy*, 407 Ill. App. 3d 442 (2011), *People v. Deloney*, 341 Ill. App. 3d 621 (2003), and *People v. Dean*, 226 Ill. App. 3d 465 (1992), upon

which the State relies, the potential alibi witnesses were related to the defendant. Thus, we concluded that counsel's decision not to call those witnesses was not objectively unreasonable because the jury would afford their testimony less weight. *Lacy*, 407 Ill. App. 3d at 466-67; *Deloney*, 341 Ill. App. 3d at 635; *Dean*, 226 Ill. App. 3d at 468. Additionally, in *Deloney*, the record demonstrated that this was counsel's reasoning. *Deloney*, 341 Ill. App. 3d at 635. In contrast, none of the witnesses here are related to defendant and there is nothing in the record suggesting that counsel had any valid strategic reason for not calling them at trial.

¶ 54     Accepting the allegations as true, as we must at the first stage of postconviction proceedings, the affidavits constitute significant exculpatory evidence that would have supported defendant's alibi, and we cannot conceive of any strategic reason for trial counsel to not present this testimony at defendant's trial. The affidavits support the defense's theory that the State's witnesses falsely identified defendant as one of the shooters. We cannot at this point assess the credibility and weight that would be given to these three alibi witnesses. *People v. Sanders*, 2016 IL 118123, ¶ 42 ("Credibility determinations may be made only at a third-stage evidentiary hearing."). Just as in *Tate*, the record does not reflect whether trial counsel made a professionally reasonable tactical decision not to call the witnesses or whether the failure to call them was the result of incompetence. 305 Ill. App. 3d at 612; see also *Cleveland*, 2012 IL App (1st) 10163, ¶ 60 ("[I]t is difficult to see how refusing to call several witnesses who could have provided an alibi for the defendant constituted reasonable trial strategy."); *Garza*, 180 Ill. App. 3d at 269 (finding no tactical reason to forego calling witnesses to corroborate the defendant's alibi). Therefore, we find that trial counsel's performance was arguably deficient. We now turn to the second prong for ineffective assistance of counsel claims.

¶ 55      The State's theory at trial was that Fenton and defendant were part of a "murdering duo" such that defendant either shot Bowman and Collier or was accountable for Fenton shooting them. The State's evidence consisted of the testimony of the four eyewitnesses, which, as illustrated above, was inconsistent and had varying degrees of credibility due to their intoxication at the time of these events, their criminal histories, and their biases. No murder weapon was recovered, and there was no firearms evidence directly linking defendant to the shooting. There was also not a confession from defendant.

¶ 56      Conversely, if counsel had called the alibi witnesses at trial, there would have been evidence before the jury from three witnesses that defendant was not present at the time of the shooting. Additionally, the testimony would have corroborated the information that defendant's only involvement related to the golf club incident. Although there may be credibility issues with the alibi witnesses due to their own intoxication at the time of the events, it is at least arguable that the jury could have found insufficient evidence of defendant's guilt where multiple witnesses could attest that he was not present at the time of the shooting. Based on the evidence in the record, it is at least arguable that defendant was prejudiced by his counsel's failure to call these alibi witnesses at trial Accordingly, we reverse the dismissal of defendant's postconviction petition and remand for further postconviction proceedings. We express no opinion as to whether the affidavits will support a substantial showing of a constitutional violation during second-stage proceedings.

¶ 57      As we have reversed the circuit court with respect to defendant's claim of ineffective assistance of counsel,   we need not address defendant's actual innocence claim or unconstitutional sentence claim because our supreme court has held that partial summary dismissals are not permitted under the Act at the first stage of postconviction proceedings.

*People v. Rivera*, 198 Ill. 2d 364, 374 (2001); see also *People v. Romero*, 2015 IL App (1st) 140205, ¶ 27 (stating that if even a single claim in a multiple-claim postconviction petition is not dismissed at the first stage, then all of the claims "must be docketed for second-stage proceedings regardless of the merits of the remaining claims in the petition"). Thus, defendant's entire *pro se* petition is advanced to the second stage of the postconviction process.

¶ 58                                         III. CONCLUSION

¶ 59          For the reasons stated, we reverse the judgment of the circuit court and remand for second-stage proceedings.

¶ 60          Reversed and remanded.