2020 IL App (1st) 190500-U
Order filed: May 15, 2020

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-0500

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 93 CR 0100301 |
| | ) | |
| ROOSEVELT MYLES, | ) | Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

## ORDER

¶ 1    *Held*: Defendant appealed the second-stage dismissal of his amended postconviction petition, alleging that he had made a substantial showing of actual innocence, ineffective assistance of counsel, and a *Brady* violation. We affirmed the dismissal of the *Brady* claim and the actual innocence claim premised on the detective's pattern and practice of misconduct. We reversed the dismissal of the ineffective assistance claim and the actual innocence claim based on the recantation of the eyewitness's trial testimony and remanded for a third-stage evidentiary hearing.

¶ 2    A jury convicted defendant, Roosevelt Myles, of first degree murder and attempted armed robbery in connection with the shooting death of Shaharain Brandon. Defendant subsequently filed

an amended postconviction petition asserting that his trial counsel provided ineffective assistance, that he was actually innocent premised on the lead detective's pattern of misconduct and on the recantation of the only eyewitness's trial testimony, and that the State committed a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The postconviction court dismissed defendant's amended petition at the second stage. Defendant appeals. We affirm the dismissal of defendant's claims of actual innocence premised on the detective's pattern of misconduct and of a *Brady* violation, reverse the dismissal of defendant's claims of ineffective assistance and of actual innocence based on the witness's recantation of her trial testimony, and remand for a third-stage evidentiary hearing.

¶ 3    At the jury trial, Debra Lenoir testified that, at about 2:45 a.m. on November 16, 1992, she and her brother were walking down Cicero Avenue toward a store on Washington Boulevard when they heard gunshots. As they crossed the street toward the store, defendant walked up behind them but he said nothing to either Lenoir or her brother. Lenoir bought some wine at the store, exited, and saw defendant again, who continued walking with them until he turned on Kilpatrick Avenue toward Madison Street.

¶ 4    Octavius Morris, who was 18 years old at the time of trial and 15 years old at the time of the offense, testified that she lived on West Washington Boulevard between Lamon and Cicero Avenues. Around 2:30 a.m. on November 16, 1992, about 15 minutes prior to Lenoir's interaction with defendant, Morris was walking with Brandon on the sidewalk outside her house. Defendant approached, said, "[t]his is a stickup," and shot Brandon. Defendant then ran into a gangway beside Morris's house. Morris ran to her cousin's home, then returned to the scene and spoke to some officers, who placed her in the back of a police car with her mother. The officers brought defendant over to the car for her to identify him. Morris told the officers that defendant was not the shooter,

but she testified at trial that she lied to the officers because she was scared of defendant as she had just seen him shoot Brandon.

¶ 5    Morris testified that later that day, at a hospital, she told a detective that the shooter was a light-skinned man. Detective Lawrence Poli testified that he was the officer who spoke with Morris at the hospital on November 16, 1992, and that she told him there were two teenage offenders and that she could not see the shooter's face. In contrast to Morris's description of the shooter to Detective Poli, defendant was 28 years old at the time of trial and has a dark complexion.

¶ 6    Between November 16 and December 7, 1992, Detectives Wojcik and McDonald came to Morris's house about six times and repeatedly asked her whether defendant was the shooter. On December 7, 1992, Morris told the detectives for the first time that defendant was the shooter. She identified defendant in a lineup the next day, December 8.

¶ 7    About 10 months later, on October 18, 1993, Morris spoke with a defense investigator alone and told him that the shooter was not defendant, but was a "light skinned guy, standing about 5'7" who was dressed in black. She told the defense investigator that she had falsely identified defendant as the shooter to the police on December 7 and 8, 1992, because she was tired of the police repeatedly coming to her house and questioning her about defendant's involvement in the shooting. Morris subsequently signed a typewritten statement that said that defendant was not the shooter.

¶ 8    Morris testified that the typewritten statement exonerating defendant was false, and that she signed it only because she was scared of defendant. Morris testified that defendant was, in fact, the shooter.

¶ 9    Detective Robert Rutherford testified that on December 7, 1992, he went to Morris's home with Detective Anthony Wojcik and Detective McDonald. The detectives asked Morris about the

shooting, and she initially told them that two African-American teenagers were involved. Morris then began crying and stated that defendant was the shooter. The detectives showed Morris a photo array and she picked out a photograph of defendant and identified him as the shooter.

¶ 10    Richard English, an investigator with the Cook County Public Defender's Office, testified that on October 18, 1993, he spoke with Morris at her home with her mother present. Morris told him that defendant was not the shooter, that the shooter was a light-skinned person, and that she had identified defendant as the shooter to the police in December 1992 only because they "kept coming over and badgering her."

¶ 11    Morris signed a handwritten statement consistent with her statement to English that defendant was not the shooter. English typed out a summary of Morris's statement and gave it to her to sign, which she did on January 24, 1994. The typewritten statement, which was published to the jury, stated that a light-skinned man was the shooter and that she told police officers at the scene that defendant was not the shooter. According to the statement, police officers kept coming to her house until she "just got tired and said it was [defendant], but all the time [she] was telling them it was a light-skinned man or boy. But they kept saying [defendant's] name. So [she] said [defendant] did it."

¶ 12    The jury convicted defendant of first degree murder and attempted armed robbery. The trial court sentenced defendant to consecutive terms of 50 years' imprisonment for the first degree murder and 10 years' imprisonment for the attempted armed robbery. This court affirmed on direct appeal. *People v. Myles*, No. 1-96-1633 (1998) (unpublished order under Supreme Court Rule 23).

¶ 13    On January 11, 1999, defendant filed a *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 1996)), alleging, among other things, that his trial counsel committed ineffective assistance by failing to investigate

and call three known alibi witnesses at trial. Defendant specifically alleged that Michael Hooker, Hubert Floyd, and Derrick Floyd (the Floyd brothers) would have testified that, at the time of the shooting, he was with them in front of Ronnie Bracey's house and, therefore, he could not have been the gunman in this case. On June 30, 1999, the postconviction court summarily dismissed the petition as frivolous and patently without merit.

¶ 14    Defendant appealed the summary dismissal of his *pro se* petition. On December 29, 2000, this court reversed and remanded for second-stage proceedings, noting that "[a]lthough counsel's decision regarding whether to present a particular witness is generally considered strategic, counsel may be deemed ineffective where counsel fails to make a proper investigation or fails to present exculpatory evidence, such as testimony that would support an otherwise uncorroborated defense." *People v. Myles*, No, 1-99-2837 (2000) (unpublished order under Supreme Court Rule 23), at 4 (citing *People v. Tate*, 305 Ill. App. 3d 607, 612 (1999)). We concluded that defendant's allegation of ineffective assistance presented the gist of a meritorious claim of a constitutional violation, meaning that defendant "met his burden at the initial stage of the proceeding [such that] the petition advances to stage two where [defendant] will have the assistance of counsel." *Id.*

¶ 15    The mandate was filed in the circuit court on August 16, 2001, and the Office of the Cook County Public Defender was appointed on September 4, 2001. The cause pended in the circuit court for about 18 years and was continued nearly 100 times. Defendant eventually obtained private counsel to represent him *pro bono* in 2017, and he filed an amended postconviction petition on June 13, 2018. In his amended petition, defendant alleged that his trial counsel was ineffective for failing to present alibi testimony from Hooker and the Floyd brothers. Defendant also alleged that: he was actually innocent based on newly discovered evidence showing that Detective Wojcik, one of the detectives in this case, had "an alarming pattern and practice of misconduct [that

involved abusing and framing suspects, manipulating and coercing false testimony, and covering up his own misconduct and the misconduct of his fellow officers from 1988-2014] that he employed in this case to secure Morris's false statements implicating [defendant]"; and the State committed a *Brady* violation by failing to tender then-existing evidence of Detective Wojcik's pattern of misconduct.[1]

¶ 16    Defendant attached an affidavit from Hooker, notarized on December 29, 2014, in which he stated that, if called as a witness, he was competent to testify that: at about 2 a.m. on November 16, 1992, he was sitting in a car with the Floyd brothers and Sandra Burch in front of Bracey's house at 4741 West End Avenue; defendant walked over to the car and asked them if they had seen Bracey, and they told him no; defendant then went inside Bracey's house; Burch left the car, but he and the Floyd brothers stayed in the car, drinking a 40-ounce beer, for 30 minutes to an hour; "at that point," they heard two or three gunshots coming from Washington Street; and about five minutes after hearing the gunshots, he saw defendant coming out of Bracey's house. Hooker stated, "I know that [defendant] was not involved in the shooting on Washington Street because I saw him coming out of 4741 West End after the shots on Washington Street were fired."

¶ 17    On July 12, 2018, defendant filed a supplement to his amended postconviction petition, alleging that on June 29, 2018, Morris unexpectedly called defense counsel and stated that defendant was not the shooter and that she only implicated him at trial because she was pressured by Detective Wojcik to do so. Defendant alleged that Morris's statement recanting her trial testimony constituted newly discovered evidence of his actual innocence.

---

[1] Defendant made several other allegations of alleged constitutional errors that were dismissed by the postconviction court and not raised as issues on appeal. We need not address those allegations as defendant has forfeited our review thereof. See Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018).

¶ 18    On September 27, 2018, defendant filed Morris's typewritten affidavit as a supplemental exhibit. In her affidavit, Morris recanted her trial testimony identifying defendant. She explained:

"After I told the police that [defendant] didn't do it and that I didn't know who the shooter was, Chicago police detectives continued to come to my mother's house to question me. I specifically remember a detective named 'Tony' who aggressively kept insisting to me that [defendant] was the person who shot my friend. No matter how many times I told him that [defendant] was not the person I saw, he insisted it was [defendant]. I remember that this detective's name was 'Tony' because my brother's name is 'Tony.'

Tony, the detective, kept coming to my mother's house and harassing me. I told him that I was tired of him pressuring me to say the shooter was [defendant] and that he was going to force me to say things that weren't true if he didn't stop pressuring me. I came to believe that Tony was not going to leave me alone until I implicated [defendant]. I was young and scared and traumatized so I eventually went along with what Tony wanted me to do."

¶ 19    Morris further stated in her affidavit that Lenoir was a drug addict and that police officers had given Lenoir drugs in order to induce her to testify at trial that "it was [defendant] even though she was not there when the shooting happened."

¶ 20    The State filed motions to dismiss defendant's amended postconviction petition and his supplement to the amended petition. The postconviction court entered its written order on February 13, 2019, dismissing defendant's amended petition and the supplement thereto.

¶ 21    First, the postconviction court dismissed the amended petition on timeliness grounds, ruling that defendant's initial petition was untimely filed, which makes the amended petition also untimely. The court then addressed the merits of defendant's amended petition. With respect to

the allegation of ineffective assistance of trial counsel for the failure to present the alibi evidence, the court noted that defendant supported his claim with Hooker's affidavit that he was with the Floyd brothers in a car and saw defendant go into Bracey's residence at 4741 West End Avenue prior to the shooting and that he did not see defendant come out until five minutes after the shooting. The court found that since Hooker was not in the residence at 4741 West End Avenue with defendant, he cannot vouch for defendant's presence in that residence at the time of the shooting. According to the court, Hooker's testimony "would have done little more than place [defendant] in the area of the shooting, at the time of the shooting." The court stated that over defendant's objection, it had used Google Maps to take judicial notice that the distance between 4741 West End Avenue and the location of the shooting at 4814 West Washington Boulevard is 1,056 feet or a "mere two tenths of a mile." The court noted that "[t]here was, by Hooker's own admissions, 'about five minutes' in between the time he heard the shots and saw [defendant] exit the residence. This would have given [defendant] ample time to get back to 4741 West End Avenue following the shooting."

¶ 22     The court concluded that, at best, Hooker is a "near alibi"; even taking Hooker's affidavit as completely true, defendant "could easily be guilty of the shooting." As such, trial counsel made "a sound strategic decision to not call Hooker to testify at trial. Furthermore, there is not a reasonable probability that the outcome of the litigation would have been different had Hooker testified." Accordingly, the court dismissed defendant's claim of ineffective assistance.

¶ 23     The court also dismissed defendant's claim that he was actually innocent based on newly discovered evidence that Detective Wojcik had a pattern and practice of investigative misconduct that he employed in this case to secure Morris's false statements implicating defendant as the

shooter. The court found that defendant's allegation failed because Detective Wojcik's pattern and practice of misconduct was not similar to any conduct he is alleged to have committed in this case.

¶ 24 The court dismissed defendant's claim of a *Brady* violation because he had presented no evidence showing that the State knew about the misconduct allegations against Detective Wojcik and withheld such information from defendant.

¶ 25 Finally, the court dismissed defendant's claim of actual innocence based on Morris's recantation affidavit. The court found that Morris's recantation was not new and that it also was cumulative and would not change the result on retrial.

¶ 26 Defendant appeals the dismissal of his amended postconviction petition.

¶ 27 The Act provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated at trial or sentencing. *People v. Dupree*, 2018 IL 122307, ¶ 28. If the postconviction petition is not dismissed at the first stage as frivolous or patently without merit, it advances to the second stage where the State may either answer the petition or move to dismiss it. *Id.* If the State moves to dismiss the petition, the postconviction court must decide whether to grant the State's motion or advance the petition to the third-stage evidentiary hearing. *Id.* A postconviction petitioner is entitled to an evidentiary hearing only when the allegations in his petition supported by "affidavits, records, or other evidence" (725 ILCS 5/122-2 (West 2016)) make a substantial showing of a deprivation of rights under either the United States or Illinois Constitutions or both. *Dupree*, 2018 IL 122307, ¶ 28.

¶ 28 At the second stage, " '[t]he inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the [postconviction] court to engage in any fact-finding or credibility determinations.' " *Id.* at ¶ 29 (quoting *People v. Coleman*, 183 Ill. 2d 366, 385 (1998)). The Act contemplates that such determinations will be made at the

third-stage evidentiary hearing, not at the dismissal stage of the litigation. *Id.* In addition, at the second stage, the postconviction court examines the petition to determine its legal sufficiency and any allegations not affirmatively refuted by the record are taken as true. *Id.* Thus, the substantial showing of a constitutional violation that must be made at the second stage is " 'a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle [defendant] to relief.'" (Emphasis omitted.) *Id.* (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35). Where, as here, the postconviction court dismisses the petition at the second stage, our review is *de novo*. *Id.*

¶ 29     In his amended petition and again on appeal, defendant alleges that following this court's decision in 2000 reversing the summary dismissal of his initial petition alleging ineffective assistance of trial counsel and remanding for second-stage proceedings, his court-appointed attorneys did nearly nothing to comply with the appellate court mandate from 2001-2018. It was not until defendant secured his current counsel that an amended petition was filed in 2018 and a second-stage hearing held thereon. Defendant cursorily argues that his claim of ineffective assistance of trial counsel should be remanded for a third-stage evidentiary hearing because his constitutional rights were separately and independently violated by the delay from 2001-2018 in having his postconviction claim of ineffective assistance adjudicated. The inordinate length of time involved in bringing the postconviction petition to the court for resolution raises serious questions. However, defendant has failed to cite any authority in his appellant's brief in support of his argument as required by Rule 341(h)(7) and has not met his burden of providing a complete record of proceedings including all court dates between when the Public Defender was appointed in 2001 and the amended postconviction petition was filed in 2018. *Foutch v. O'Bryant*, 99 Ill. 2d 389,

391-92 (1984). We are therefore without a record of the reasons for the continuances and the delays. We cannot address any issues related to the delay in the absence of a complete record.

¶ 30    In his reply brief, defendant contends for the first time that we should not simply reverse the second-stage dismissal and remand for an evidentiary hearing, but that we should instead vacate his convictions for first degree murder and attempted armed robbery based on the delay from 2001-2018 in adjudicating his postconviction claim of ineffective assistance. Defendant failed to raise this argument in his amended petition and therefore it is not properly before us. *People v. Jones*, 213 Ill. 2d 498, 508 (2004).

¶ 31    Defendant next contends that the postconviction court erred in ruling that his initial *pro se* petition was untimely filed, which makes the amended petition also untimely.

¶ 32    The Act in effect at the time of the filing of the initial *pro se* petition provided:

"No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal *** or 3 years from the date of conviction, whichever is sooner, unless the petition alleges facts that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 1998).

¶ 33    Defendant's date of conviction was April 1, 1996. This court affirmed his conviction and sentence on direct appeal on February 9, 1998, and the Illinois Supreme Court denied leave to appeal on October 6, 1998. See *People v. Myles*, 179 Ill. 2d 606 (1998). Pursuant to the Act then in effect, defendant's initial *pro se* petition was due no later than April 1, 1999, which was three years from the date of conviction. Defendant timely filed his *pro se* petition on January 11, 1999. The State concedes that defendant's *pro se* petition was timely filed. Accordingly, the postconviction court erred in finding that the *pro se* petition was untimely and dismissing the amended petition for that reason.

¶ 34    The postconviction court also dismissed the amended petition on the merits, finding that none of the claims therein made a substantial showing of a constitutional violation. We proceed to address each of defendant's claims.

¶ 35    First, defendant contends he made a substantial showing that his counsel provided ineffective assistance by failing to present Hooker's alibi testimony.

¶ 36    To prevail on his claim of ineffective assistance at the second stage of postconviction proceedings, defendant was required to make a substantial showing that his counsel's failure to present Hooker's testimony was objectively unreasonable and that there is a reasonable probability that the result of the trial would have been different had his testimony been presented. *Domagala*, 2013 IL 113688, ¶¶ 35-36. Matters of trial strategy generally are immune from claims of ineffective assistance of counsel. *Dupree*, 2018 IL 122307, ¶ 44. However, counsel may be deemed ineffective where he completely fails to make a proper investigation of a viable defense or fails to present exculpatory evidence, such as testimony that would support an otherwise uncorroborated defense. See *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 36; *Tate*, 305 Ill. App. 3d at 612.

¶ 37    We must consider whether Hooker's affidavit presented a viable alibi and/or offered testimony that would support an otherwise uncorroborated defense. An alibi is defined as a "defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." Black's Law Dictionary 79 (8th ed. 2004). In determining that Hooker's affidavit was not a viable alibi because defendant would have had time to commit the shooting at 4814 West Washington Boulevard and return to Bracey's house before being seen by Hooker, the court performed a Google Maps search to take judicial notice of the exact distance between Bracey's house and the scene of the shooting and used that information in assessing Hooker's credibility as an alibi witness. The court erred in engaging in

such fact-finding/credibility determinations during second-stage proceedings. See *Dupree*, 2018 IL 122307, ¶ 29.

¶ 38    At the second stage, all well-pleaded facts in the petition and accompanying affidavits that do not conflict with the record are taken as true. *People v. Velasco*, 2018 IL App (1st) 161683 ¶ 117. Taken as true at this second stage of the proceedings, Hooker's affidavit provides a viable alibi for defendant as it places him, at the time of the shooting, at a location (Bracey's house) separate from the location of the shooting. Although Hooker was not physically inside Bracey's house with defendant at the time of the shooting, he had seen defendant enter that building 30-60 minutes earlier and he remained outside in a car in front of the building during that entire time-period and did not see defendant leave it until five minutes after the shooting. As Hooker's affidavit provides a viable alibi for defendant, we find that defendant has made a substantial showing that his defense counsel's failure to present Hooker's testimony was objectively unreasonable.

¶ 39    In so holding, we note that the defense theory at trial was to cast doubt on Morris's identification of defendant by presenting evidence of her prior inconsistent statements and by arguing that the police pressured her into identifying him and that there was no other evidence tying defendant to the shooting. Hooker's alibi testimony would have corroborated defendant's theory that Morris was lying when she testified at trial that she saw defendant shoot Brandon; defendant has made a substantial showing that his counsel acted in an objectively unreasonable manner by failing to present Hooker's testimony in support of the otherwise uncorroborated defense.

¶ 40    The State contends that defense counsel could have made a strategic decision after speaking with Hooker not to call him because he was drinking a beer at the time of the shooting. However, the record on appeal is unclear as to whether defense counsel ever met with or spoke to Hooker

prior to trial. Further, even if counsel spoke with Hooker, the record before us does not indicate the substance of their conversation. At this second stage of the proceedings, the record contains only Hooker's affidavit in which he stated that he shared one beer with two other men for a half-hour to an hour while sitting in a car in front of Bracey's house. Hooker's affidavit in and of itself does not indicate that his sharing of the one beer so impaired him as to provide counsel with a strategic reason not to call him as an alibi witness. A third-stage evidentiary hearing is the proper forum for determining whether defense counsel spoke with Hooker and the strategy, if any, in counsel's decision not to call Hooker as an alibi witness. The veracity of Hooker's alibi testimony may also be determined at the evidentiary hearing.

¶ 41 The State also argues that counsel could have made the strategic decision not to call Hooker because his testimony would have placed defendant in the general vicinity of the shooting and thereby supported Morris's statement identifying him as the shooter. However, as discussed earlier in this order, Hooker's affidavit, taken as true at the second stage, actually places defendant in Bracey's house, *away* from the scene of the shooting at the time it occurred. Mr. Hooker's affidavit, therefore, supports the defense theory at trial that Morris testified falsely when she identified defendant as the shooter. On these facts, defendant has made a substantial showing that his counsel's failure to call Hooker as an alibi witness was objectively unreasonable. We reiterate that a third-stage evidentiary hearing is the proper forum to litigate counsel's strategy behind his decision not to call Hooker and the veracity of Hooker's alibi testimony.

¶ 42 Defendant has also made a substantial showing that there is a reasonable probability that the result of the trial would have been different had counsel presented Hooker's alibi testimony, given all the inconsistent statements that Morris made to the police and to the defense investigator

regarding the identity of the shooter, and the lack of any physical evidence or admissions tying defendant to the crime.

¶ 43    As defendant has made a substantial showing of ineffective assistance of trial counsel with respect to counsel's failure to present Hooker's alibi testimony, we reverse and remand for a third-stage evidentiary hearing thereon.

¶ 44    Next, defendant contends that he made a substantial showing of actual innocence based on Morris's September 27, 2018, affidavit recanting her trial testimony and stating that she only identified him as the shooter to police and at trial because Detective Wojcik (identified as "Tony" in the affidavit) repeatedly and aggressively pressured her to do so.

¶ 45    The due process clause gives postconviction petitioners the right to assert a freestanding claim of actual innocence based on newly discovered evidence. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). The evidence in support of the claim must be newly discovered; material and not merely cumulative;  and be so conclusive that the result on retrial would probably change. *Id.* New means that the evidence was discovered posttrial and could not have been discovered earlier through the exercise of due diligence. *People v. Coleman*, 2013 IL 113307, ¶ 96. Material means that the evidence is probative and relevant to defendant's innocence. *Id.* Noncumulative means that the evidence adds to what the jury heard. *Id.* An actual innocence claim is "extraordinarily difficult to meet." *Id.* ¶ 94.

¶ 46    In the present case, Morris's recantation affidavit, which we take as true at the second stage of postconviction proceedings, was new as it explained that her trial testimony identifying defendant was procured under coercion by Detective Wojcik. The State argues that Morris's affidavit is not new because she made a similar typewritten statement to the defense investigator, English, which was published at trial. However, a careful examination of Morris's statement to

English reveals that she only stated that unidentified "officers" kept coming to her house and questioning her about defendant, and that she eventually grew "tired" and said that defendant "did it." At trial, Morris testified that although officers frequently came to her house prior to her identification of defendant, "it wasn't no pressure on me." In contrast to her statement to English and her testimony at trial, Morris's recantation affidavit specifically identified Detective Wojcik as the officer who kept coming to her house and "harassing" her and she stated that his "pressuring" of her forced her "to say things that weren't true" and to identify defendant as the shooter. Accordingly, Morris's recantation affidavit, which stated for the first time that she had lied at trial when identifying defendant because she had been pressured to do so by Detective Wojcik, is new evidence that was not available at defendant's trial.

¶ 47    Defendant has made a substantial showing that Morris's recantation affidavit is material and noncumulative, as it is probative and relevant to his innocence and adds to what the jury heard at trial, and is so conclusive that the result on retrial would probably change in the absence of any other evidence tying him to the shooting. Accordingly, we reverse the dismissal of defendant's actual innocence claim based on Morris's affidavit and remand for a third-stage evidentiary hearing.  See *People v. Steidl*, 177 Ill. 2d 239, 261 (1997) (recantation warranted an evidentiary hearing where the recanting witness was the only direct identification witness to the crime and where there was no physical evidence linking defendant to the crime scene).

¶ 48    Next, we address defendant's claim that he made a substantial showing of actual innocence based on Detective Wojcik's pattern and practice of misconduct. Defendant is using the evidence of Detective Wojcik's pattern and practice of misconduct, not only in support of his actual innocence claim, but also in support of the *Brady* claim that we will discuss later in this order. This is impermissible because the evidence being relied on to support a freestanding claim of actual

innocence cannot also be used to supplement an assertion of a constitutional violation with respect to defendant's trial. *People v. Hobley*, 182 Ill. 2d 404, 444-45 (1998). As a result, defendant's actual innocence claim fails. See *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶ 30 (defendant's actual innocence claim based on evidence that the detective had a pattern of coercing and intimidating witnesses in other cases failed, where the same evidence was used to supplement his assertion of a *Brady* violation).

¶ 49    Even if we were to consider the merits of defendant's actual innocence claim based on Detective Wojcik's pattern and practice of misconduct, he would fare no better. As will be discussed later in this order, the evidence of Detective Wojcik's pattern and practice of misconduct is dissimilar to his conduct toward Ms. Morris and thus was not material or admissible at trial. As such, the pattern and practice evidence with respect to Detective Wojcik does not support a freestanding claim of actual innocence. *Coleman*, 2013 IL 113307, ¶ 96.

¶ 50    Next, we address defendant's claim that he made a substantial showing that the State deprived him of his due process guarantees as articulated in *Brady* where it failed to disclose exculpatory evidence that Detective Wojcik engaged in a pattern and practice of using abusive and coercive tactics during his investigations. Defendant alleges that such evidence would have bolstered his defense theory that Morris was pressured into identifying him as the shooter.

¶ 51    Pursuant to *Brady*, the prosecution must disclose evidence that is favorable to defendant and material either to guilt or to punishment. *Brady*, 373 U.S. at 87. Evidence is material where a reasonable probability exists that the result of the trial would have been different had the evidence been disclosed to the defense. *People v. Harris*, 206 Ill. 2d 293, 311 (2002).

¶ 52    The evidence of Detective Wojcik's pattern and practice of misconduct primarily related to allegations that he had engaged in threatening or physically abusive conduct with suspects

and/or witnesses in criminal cases and had prepared false reports in other cases. Such conduct is not at issue here. Morris alleged in her recantation affidavit that Detective Wojcik repeatedly and aggressively questioned her about defendant's involvement in the shooting, but she never alleged that his aggressive and persistent questioning included threats or physical abuse, or that he falsified any records. In the absence of any similarity between Detective Wojcik's alleged pattern and practice of misconduct and his conduct toward Morris here, such pattern and practice evidence would not have been admissible. See *People v. Patterson*, 192 Ill. 2d 93, 115 (2000) (evidence of prior allegations of police misconduct is admissible only if the misconduct is similar to the allegations of misconduct in the case at bar). As the evidence of Detective Wojcik's pattern and practice of misconduct was not admissible here (and thus not material to defendant's guilt or punishment), it was not required to be disclosed under *Brady*. Accordingly, we affirm the dismissal of defendant's *Brady* claim.

¶ 53    Defendant argues that *People v. Reyes*, 369 Ill. App. 3d 1 (2006) and *People v. Almodovar*, 2013 IL App (1st) 101476, compel a different result. We disagree.

¶ 54    Unlike *Reyes*, the present case involved second-stage proceedings, where defendant was required to make a substantial showing of the alleged constitutional (*Brady*) violation, which is a greater burden than the first-stage, "gist of a constitutional claim" burden at issue in *Reyes*. Also, in *Reyes*, the detective's prior pattern of physically abusive behavior was found to be material and admissible to cast doubt on defendants' confessions due to the similarity between the detective's prior abusive conduct and the physically abusive conduct toward defendants as described in the petition. *Reyes*, 369 Ill. App. 3d at 19. In the present case, by contrast, Detective Wojcik's alleged pattern and practice of physically abusing suspects and making false statements was not similar to his conduct toward Morris and thus was not material and admissible to cast doubt on her in-court

identification of defendant as the shooter. We further note that unlike *Reyes*, Detective Wojcik did not testify at defendant's trial and no motion to suppress was filed, and thus the evidence of Detective Wojcik's alleged pattern and practice of misconduct was not material and admissible for purposes of impeaching him. As Detective Wojcik's alleged pattern and practice of misconduct was not material and admissible at the trial here, it was not required to be disclosed under *Brady*.

¶ 55     The other case cited by defendant, *Almodovar*, is also inapposite. The issue on appeal there was whether Almodovar had satisfied the "cause" element of the cause-and-prejudice test to allow for the filing of the successive petition. *Almodovar*, 2013 IL App (1st) 101476, ¶¶ 59, 62. This court found that Almodovar satisfied the cause requirement because he was impeded from fully raising his claim of suggestive identification procedures in the initial postconviction proceedings without the evidence of the detective's similar pattern of misconduct in other cases. *Id.* ¶¶ 63-64. We noted that evidence of a similar pattern of misconduct in other cases "would have a severe negative impact" on the credibility of that detective's testimony *Id.* ¶ 69.

¶ 56     Unlike *Almodovar*, the instant case did not involve the first-stage dismissal of a petition and the denial of leave to file a successive petition; rather, the present case involved a dismissal at the second stage, where defendant was required to make a substantial showing of a constitutional violation. Also unlike *Almodovar*, Detective Wojcik did not testify at trial and the evidence of his pattern and practice of misconduct was not similar to his conduct toward Morris; as such, the pattern and practice evidence was not material as it would not have been admissible at trial either for purposes of impeaching Detective Wojcik or to show that Morris's identification of defendant in the lineup and at trial was suspect. Therefore, the State was not required to disclose the evidence of Detective Wojcik's pattern and practice of misconduct under *Brady*.

¶ 57　In his reply brief, defendant contends that he alleged in his amended petition that "his *Brady* guarantees were violated when the prosecution failed to disclose that Morris attempted to recant her identification *directly to prosecutors*." (Emphasis in the original.) Defendant argues that he "based this claim on Morris's [recantation] affidavit in which she expressly states that she told the prosecutors that [defendant] was not the shooter but that they wouldn't listen to her and insisted that she identify him at trial." Defendant contends that the postconviction court ignored this *Brady* claim altogether.

¶ 58　Contrary to defendant's argument, our review of the amended petition and its supplement reveals that defendant did not argue that a *Brady* violation occurred by the prosecution's failure to disclose that Morris attempted to recant her identification directly to prosecutors. Also, Morris did not specifically aver in her recantation affidavit that she told prosecutors that defendant was not the shooter but that they insisted she identify him at trial anyway. As the alleged *Brady* violation was not raised in the amended petition or its supplement and also was not supported by Morris's affidavit, it is not properly before us. See *Jones*, 213 Ill. 2d at 508.

¶ 59　For all the foregoing reasons, we affirm the second-stage dismissal of defendant's postconviction claims of actual innocence premised on Detective Wojcik's pattern and practice of misconduct and the State's alleged *Brady* violation. We reverse the dismissal of defendant's claim of actual innocence based on Morris's recantation affidavit and the claim of ineffective assistance based on trial counsel's failure to present Hooker's alibi testimony. We remand for a third-stage evidentiary hearing on the ineffective assistance and actual innocence claims.

¶ 60　Affirmed in part, reversed in part, and remanded.