NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 180522-U

NO. 4-18-0522

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 16, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| MALACHI DWAUN HARRIS, | ) | No. 16CF1253 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court affirmed, finding the trial court conducted a proper
*Krankel* inquiry into defendant's posttrial claims of ineffective assistance of
counsel.

¶ 2     In November 2016, defendant, Malachi Dwaun Harris, was charged in an

eight-count indictment with two counts of aggravated possession of a stolen firearm (720 ILCS

5/24-3.9(a)(1) (West 2016)), a Class 1 felony; one count of attempt gunrunning (720 ILCS

5/24-3(A)(a) (West 2016)), a Class 2 felony; and five counts of possession of a stolen firearm

(720 ILCS 5/24-3.8(a) (West 2016)), a Class 2 felony. After a bench trial in January 2018,

defendant was found guilty of count I, aggravated possession of a stolen firearm, and counts

IV-VII, possession of stolen firearms. The trial court found counts IV-VII merged into count I

for purposes of entering a judgment of conviction. After a presentence investigation and report,

defendant was sentenced to eight years in the Illinois Department of Corrections, along with two

years of mandatory supervised release (MSR). Defendant appeals.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was originally charged by information with one count of aggravated possession of a stolen firearm, a Class 1 felony; one count of attempt gunrunning, a Class 2 felony; and five counts of possession of a stolen firearm, Class 2 felonies, in November 2016. Several days later, indictments were returned for the same offenses, and in June 2017, the McLean County State's Attorney's Office initiated extradition proceedings to extradite defendant from his home state of Indiana.

¶ 5        Defendant was charged after being named by a codefendant, William McCoy, as one of three persons involved in the burglary of a sporting goods business in Springfield in November 2016. Entry into the business was made by driving a vehicle previously stolen in Indianapolis, Indiana, through the wall of the store and absconding with a number of firearms. The codefendant, who identified defendant at trial as one of two other persons involved, testified they left the store in another vehicle, a red Chevrolet Impala, driven by defendant, which was eventually stopped in McLean County after a police chase. McCoy was the only occupant arrested at the scene. The Impala, which was ultimately connected to defendant, was likewise from Indiana and found to contain some of the stolen firearms.

¶ 6        Defendant waived a jury and proceeded to a bench trial in January 2018, which was continued in progress to two days in March 2018. At the close of the State's case, the trial court granted defense counsel's motion for a directed finding on counts II and VIII. Defendant elected not to testify after being twice admonished and given time to discuss the matter with counsel. At the close of all the evidence, defendant renewed, and the court granted, defendant's motion for a directed finding as to count III. The court took the matter under advisement and

ruled two days later, finding defendant guilty of counts I and IV-VII. (the docket sheet incorrectly indicates counts V-VIII).

¶ 7 Defendant filed a "Motion for Judgment of Acquittal or in the Alternative Motion for New Trial" in April 2018, claiming (1) he was not proved guilty beyond a reasonable doubt and (2) the trial court erred in: (a) denying defendant's motion *in limine* prior to trial, (b) admitting certain identified exhibits over defendant's objections, (c) admitting expert testimony from two police witnesses regarding cell phone records and analysis, (d) admitting opinions regarding identified cell phone records and cell site location testimony, and (e) partially denying defendant's oral motion for a directed finding. Defendant's motion was denied.

¶ 8 The trial court sentenced defendant to eight years' imprisonment with two years of MSR and credit for pretrial detention. Defendant appeals.

¶ 9 II. ANALYSIS

¶ 10 Defendant contends the trial court erred by failing to conduct an adequate preliminary *Krankel* inquiry into what he contends was a posttrial assertion he was denied his constitutional right to testify. See *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). Although defendant frames the issue as an inadequate *Krankel*, inquiry, the State argues the issue is, in reality, "whether the trial court insured that defendant's waiver was unequivocal." Further, the State contends this issue, having never been raised in the trial court, is now forfeited. Defendant's specific claim of error is with the sufficiency of the trial court's *Krankel* inquiry into defendant's waiver of his right to testify. For the reasons stated below, we limit our review to this issue alone.

¶ 11 Whether the trial court conducted a proper *Krankel* preliminary inquiry presents a question of law that we review *de novo*. *People v. Jackson*, 2020 IL 124112, ¶ 98. If the trial

- 3 -

court's inquiry was properly conducted and the court decided the merits of defendant's claim, we will reverse only if the trial court's actions constitute manifest error, or error that is clearly evident, plain, and indisputable. *Jackson*, 2020 IL 124112, ¶ 98.

¶ 12     Defendant's brief accurately recited a portion of a lengthy and detailed colloquy between defendant and the trial court regarding defendant's right to testify, ultimately claiming "the record in this case does not establish that he unequivocally waived his right to testify." Defendant failed to mention this colloquy took place after an earlier admonition to defendant about his right to elect whether to testify or not. This admonition was preceded by comments by the court as follows:

> "So in order to anticipate what options would be available to the defendant as to whether or not he wishes to present any evidence, first let me indicate to you, [defendant], that as it relates to any other witness, Mr. Lewis makes the determination on whether he wishes to call any such witness as part of your defense. That is not true, however, when it relates to whether you would elect or choose to testify as a witness in your case. Basically there are certain decisions that belong solely to an individual charged with a crime in a case, and that includes not only what plea to enter, whether to waive a jury trial, and then the next issue is whether to testify on your own behalf. So although I am not asking you for an election at this point in time, I do want to have a preliminary discussion with you *to encourage you to have additional discussions with your attorney, Mr. Lewis,* before the time would

arise as early as this afternoon as to whether or not you would elect

or chose to testify as a witness in your case." (Emphasis added.)

¶ 13          It was only after these preliminary remarks that the trial court then gave its

admonishment:

"So you do have a right to testify, but you may elect not to testify.

If you decide that you wish to testify then you will be giving up

your constitutional rights against self-incrimination and you will

subject yourself to cross-examination by the prosecuting attorney

at the conclusion of your direct testimony. If you decide not to

testify then your election will not be considered by the Court in

any way in deciding upon its verdict. *You should discuss your*

*rights concerning testifying with your attorney*, and although he

has an obligation to give you legal advice on the subject, *ultimately*

*it is your decision to make* as to whether to testify or not. *So please*

*take those matters into consideration and follow up with additional*

*questions that you may have of Mr. Lewis* before the time would

arise later today as to whether you wish to testify or not."

(Emphases added.)

¶ 14          The court then recessed for the lunch hour, allowing defendant substantial time

for discussion with his attorney. Afterwards, once defense counsel indicated the defense was

presenting no evidence, the trial court initiated a conversation with defendant, again omitted

from defendant's brief:

"THE COURT: Mr. Lewis has indicated that it is his

intention not to call any witnesses as part of your defense. As a matter of trial strategy he makes the determination on whether or not he would wish to call either of the potential witnesses that had been disclosed earlier, Diana Pittman [spelled out by the court], or Diane Illucens, Killches [spelled out], hyphen, Riley [spelled]. However, that does not apply with respect to whether you wish to testify as a witness in your own case. Have you taken into consideration the matters that I asked you to consider between then and now as to whether or not you wish to testify, [defendant]?

DEFENDANT: Yes.

THE COURT: Okay. Let me be more specific. You've considered whether or not you wish to testify as a witness in your case; is that correct?

DEFENDANT: Yeah, I don't want to testify.

THE COURT: You're going to have to speak up.

DEFENDANT: No, I don't want to testify.

THE COURT: We're working towards that. I need to ask you a few more questions *to make sure that that is a knowing and voluntary decision on your part.* You understand that *ultimately it's your decision to make* regardless of whatever recommendation Mr. Lewis may provide to you?

DEFENDANT: Yes.

THE COURT: So this is a personal decision on your part;

do you understand that?

DEFENDANT: Yes.

THE COURT: *Did you have adequate opportunity in your own mind in order to discuss this issue with Mr. Lewis?*

DEFENDANT: Yes.

THE COURT: *Did he answer your questions for you*?

DEFENDANT: Yes.

THE COURT: Without telling me what his advice was, did he give you a recommendation.?

DEFENDANT: A recommendation?

THE COURT: Did he tell you what in his opinion he thought you should do?

DEFENDANT: Yes.

THE COURT: Did you take that into consideration in your decision?

DEFENDANT: Yes, in my decision, yes.

THE COURT: *But ultimately you understand that it's your decision to make?*

DEFENDANT: Correct.

THE COURT: Were there any additional questions, not at this time in the open or in public, but any additional questions that you need to ask Mr. Lewis before you would make this a final and irrevocable decision not to testify as a witness in your case?

DEFENDANT: Yeah.

THE COURT: Okay. I'm not saying it's a wrong answer but it's not a good answer for purposes of the record. Did you need additional time to talk to Mr. Lewis about this decision?

DEFENDANT: Oh, no, no.

THE COURT: *So you're comfortable that at this time the court will accept then your decision as final and irrevocable, you can't change your mind at a later point in time?*

DEFENDANT: Yes." (Emphases added.)

The court then found defendant's decision was "knowing and voluntary and personal."

¶ 15        It is against this backdrop appellate counsel contends the trial court failed to conduct a proper *Krankel* inquiry when, during defendant's statement in allocution, he said, "[a]nd, again, I'd like to say I didn't get a chance to prove my innocence. I didn't get the chance to really speak." Appellate counsel interprets this comment as a complaint by defendant he did not get to testify at his trial. Counsel acknowledges the trial court "properly interpreted [defendant's] complaint as an ineffective assistance of counsel claim" but contends further inquiry was needed. By taking snippets of testimony from different parts of the trial, defendant patches together a claim he was perhaps confused, intimidated, or misunderstood when being admonished about his right to testify.

¶ 16        Further, defendant failed to object or raise this issue before the trial court. For an issue to be preserved for review on appeal, the record must show (1) a contemporaneous objection to the trial court's error was timely made and (2) the issue was contained in a written posttrial motion. See *People v. Denson*, 2014 IL 116231, ¶ 11, 21 N.E.3d 398. Our supreme

court went further in *Denson*, explaining "[t]his court's forfeiture rules exist to encourage defendants to raise issues in the trial court, thereby ensuring both that the trial court has an opportunity to correct any errors prior to appeal and that the defendant does not obtain a reversal through his or her own inaction." *Denson*, 2014 IL 116231, ¶ 13. Although it is true that forfeiture is only a bar on the parties and not a limitation on the court (*In re Madison H.*, 215 Ill. 2d 364, 371, 830 N.E.2d 498, 503 (2005)), as the Third District noted, this "oft-cited proposition does not abrogate standard waiver and forfeiture principals and 'should not be a catchall that confers upon reviewing courts unfettered authority to consider forfeited issues at will.' " *People v. Pellegrini*, 2019 IL App (3d) 170827, ¶ 48, 137 N.E3d 182 (quoting *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 33, 975 N.E.2d 583). In this instance, we elect to address the adequacy of the trial court's preliminary *Krankel* inquiry as it relates to defendant's claimed denial of his right to testify since it can be resolved simply by looking at the transcript. By doing so, we find defendant's election against testifying was unequivocal.

¶ 17        In response to defendant's assertion, "I didn't get a chance to prove my innocence. I didn't get a chance to really speak," the trial court pointed out how the transcript of the proceedings stood in direct contradiction to his claim.

¶ 18        Under a *Krankel* analysis, when a defendant makes a claim of ineffective assistance, the trial court should first examine the factual basis of the defendant's claim and determine whether the claim lacks merit or pertains only to matters of trial strategy before assessing the need to appoint new counsel. If the allegation shows possible neglect of the case, the court should then appoint new counsel; otherwise, it can deny the *pro se* motion. *People v. Roddis*, 2020 IL 124352, ¶ 35. In *Roddis*, our supreme court repeated their oft-quoted language, explaining how such a hearing should proceed: " 'some interchange between the trial court and

- 9 -

trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is *** usually necessary in assessing what further action, if any, is warranted on a defendant's claim.' " *Roddis*, 2020 IL 124352, ¶ 53 (quoting *People v. Moore*, 207 Ill. 2d 68, 78, 797 N.E.2d 631, 638 (2003)). Additionally, the *Roddis* court said, the trial court may " 'base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face.' " *Roddis*, 2020 IL 124352, ¶ 53 (quoting *Moore*, 207 Ill. 2d at 79).

¶ 19    The trial court did that here, noting in response to defendant's comment:

"you were offered the opportunity by the Court to testify during

the course of the trial. And that you had an opportunity to discuss

with your attorney about that decision and the options that you had

and further recognized that it was your decision to make. And that

you made a decision that you elected not to testify as a witness in

your case. So the record on that particular component of the issue

also is something that is contradicted directly by the transcript of

these proceedings as well as the record of these proceedings."

¶ 20    As a result, the claim defendant was deprived of the opportunity to testify is unsupported in the record. With a certain touch of irony, defendant cited *People v. Palmer*, 2017 IL App (4th) 150020, ¶ 23, 74 N.E.3d 1198, in recognition that the record can rebut such a claim. In *Palmer*, this trial court conducted a substantially similar inquiry, which we found sufficient to rebut defendant's claim his right to testify was refused. We do so again.

¶ 21    III. CONCLUSION

¶ 22    For the reasons set forth above, we find the trial court's preliminary *Krankel*

inquiry was adequate and the record does not support defendant's claim he was deprived of his right to testify. The judgment of the trial court is affirmed.

¶ 23   Affirmed.